ENRIQUE IRIZARRY IRIZARRY, peticionario, *v.* CORTE DE DIS-
TRITO DE PONCE, HON. RAMÓN A. GADEA PICÓ, JUEZ, de-
mandada.

Núm 15.—*Sometido:* Julio 18, 1944. *Resuelto:* Julio 28, 1944.

*Carlos E. Colón,* abogado del peticionario; *James Fleming, John M. Durbing, R. García Cintrón* y *Eulogio Riera,* abogados del Administrador de la Oficina de Administración de Precios, como *amicus curiae* y *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La Ley Federal de Emergencia para el Control de Precios de 1942—50 U.S.C.A. App. Sec. 901 y siguientes—creó una Oficina de Administración de Precios bajo la dirección de un Administrador de Precios. (Sección 921). El Administrador estaba autorizado, entre otras cosas, para fijar, mediante reglamentos, precios máximos a los artículos de comercio. (Sección 902).

La sección 904 declara ilegal la venta de cualquier artículo en violación de tales reglamentos. La sección 925 declara que es delito, punible por multa no mayor de $5,000 y prisión no mayor de dos años, el que cualquier persona a sabiendas infrinja cualquier disposición de la sección 904. La sección 925 también dispone que las cortes de distrito de los Estados Unidos tendrán jurisdicción sobre procedimientos criminales por violaciones de la sección 904. La sección 901 (*c*) dispone que la ley "será aplicable a los Estados Unidos, sus territorios y posesiones . . .", la que, desde luego, incluye a Puerto Rico.

A tenor con dicha ley el Administrador fijó mediante reglamentos precios máximos prácticamente para todos los artículos de comercio. Entre estos reglamentos estaba el Reglamento núm. 183 sobre Precios Máximos que fijaba precios máximos a los miles de artículos vendidos en Puerto Rico. (7 F.R. 5620). El 7 de abril de 1943, este Reglamento fué enmendado por la Enmienda 21. (8 F.R. 4351).[1]

Después de entrar en vigor el referido Reglamento, según fué enmendado en abril de 1943, la Legislatura de Puerto Rico, aprobó la Ley núm. 31, Leyes de Puerto Rico, 1943 (pág. 83). Se titulaba, "Ley para cooperar con el Gobierno de los Estados Unidos en la dirección eficaz de la guerra; para poner en vigor todos los reglamentos, órdenes y listas de precios promulgados o adoptados por la Oficina de Administración de Precios de acuerdo con lo dispuesto por la Ley de Emergencia para el Control de Precios de 1942, enmendada por la Ley No. 729 del 77º Congreso, aprobada el 2 de octubre de 1942; para convertir en *"misdemeanor"* cualquier violación de tales reglamentos, órdenes y listas de precios, y para fijar penalidades por tales violaciones, y para otros fines."

Los artículos 1, 2, y 3 de la Ley núm. 31, dicen como sigue:

"Artículo 1.—El Pueblo de Puerto Rico reconoce que el estricto cumplimiento de todos los reglamentos, órdenes, y listas de precios promulgados o adoptados por la Oficina de Administración de Precios, bajo la autoridad de la Ley de Emergencia de Control de Precios de 1942, tal como fué enmendada por la Ley No. 729 del 77º Congreso, aprobada en octubre 2, 1942, es necesario para la dirección eficaz de la guerra y redunda en beneficio de la defensa y seguridad nacional, por lo que declara ser la política del Gobierno de Puerto Rico ayudar a poner en vigor el programa de precios del Gobierno Federal en tanto y en cuanto dicho programa ha sido plasmado en los reglamentos, órdenes, y listas de precios que han sido promulgados o adoptados, o que en el futuro sean promulgados por la Oficina

---

[1] La lista de precios contenida en dicha Enmienda 21 fué enmendada nuevamente el 25 de mayo de 1943, por la Enmienda 36 (8 F. R. 7354).

de Administración de Precios bajo la autoridad de la Ley de Emergencia de Control de Precios de 1942, tal como ha sido enmendada.

"Artículo 2.—Cualquier persona que intencionalmente ejecutare cualquier acto prohibido, o que intencionalmente dejare de ejecutar un acto requerido por cualquier disposición de cualquier reglamento, orden, o lista de precios promulgado o adoptado por la Oficina de Administración de Precios, bajo la autoridad de la Ley de Emergencia de Control de Precios de 1942, tal como ha sido enmendada, será culpable de delito menos grave (*misdemeanor*), y convicta que fuere, será castigada por la primera infracción con multa no mayor de mil (1,000) dólares o cárcel por un término no mayor de un (1) año, o ambas penas, a discreción del tribunal, y por las subsiguientes infracciones con multa no menor de (100) dólares ni mayor de cinco mil (5,000) dólares o cárcel por un término no menor de un (1) mes ni mayor de dos (2) años, o ambas penas, a discreción del tribunal.

"Artículo 3.—Por la presente se confiere jurisdicción a las cortes insulares sobre dichos delitos y se impone a todos los fiscales de distrito, magistrados y funcionarios encargados de mantener el orden público en la isla, el deber de poner en vigor las disposiciones de la sección 2 de esta Ley."

El 13 de mayo de 1943 se radicó una denuncia ante la Corte Municipal de Ponce imputando al peticionario una infracción del artículo 2 de la Ley núm. 31. La denuncia alegaba que el 9 de mayo de 1943 el peticionario había vendido ajos al detall a un precio mayor que el establecido por el referido Reglamento Revisado sobre Precios Máximos núm. 183. El peticionario fué convicto y se le impuso una multa en la corte municipal. Apeló a la corte de distrito donde radicó una excepción perentoria a la denuncia, alegando que las cortes insulares no tienen jurisdicción sobre dicha denuncia, toda vez que la Ley núm. 31 es nula. La corte de distrito dictó una resolución declarando sin lugar la excepción perentoria. Expedimos el auto de *certiorari* a tenor con la Ley núm. 32, Leyes de Puerto Rico, 1943 (pág. 85) con el fin de revisar esta resolución de la corte de distrito, a causa del interés público que hay envuelto en la pronta resolución de la cuestión suscitada por el peticionario.

 El peticionario alega que la Ley núm. 31 es nula "por estar la misma por sus propios términos y en su administración práctica en sustancial conflicto" con la Ley Federal de Emergencia para el Control de Precios. El peticionario aparentemente tomó este lenguaje del caso de *Luce & Co., S. en C.* v. *Junta de Salario Mínimo de Puerto Rico,* 62 D.P.R. 452, donde dijimos, citando *Puerto Rico* v. *Shell Co.,* 302 U. S. 253, (pág. 461) ". . . para que la ley federal excluya la insular, no basta que las dos leyes abarquen la misma materia, sino que es preciso que la ley insular por sus propios términos o en su administración práctica esté en conflicto *sustancial* con la ley del Congreso o manifiestamente infrinja la política pública de la ley federal."

El peticionario aparentemente concede que la Legislatura insular, especialmente durante una emergencia, puede aprobar bajo el poder de policía, legislación por la cual se fijen y controlen los precios (*Miranda* v. *Corte de Distrito,* 63 D. P.R. 161, resuelto el 6 de marzo de 1944; *Pueblo* v. *Díaz,* 62 D.P.R. 136). En verdad, si bien el Congreso indudablemente tiene el poder de aprobar la Ley Federal de Emergencia para el Control de Precios bajo el poder de guerra (*Yakus* v. *United States,* 321 U. S. 414, 422), constitucionalmente hablando se justifica con más facilidad la legislación sobre fijación de precios, en épocas normales, bajo el poder de policía del estado (véase *Nebbia* v. *New York,* 291 U. S. 502). Sea ello como fuere, tanto el Congreso como nuestra Legislatura han actuado. Y el peticionario no ataca una de las dos leyes *per se.* Más bien alega que nuestra ley es nula porque está en conflicto con la ley federal.

El argumento del peticionario es en síntesis (1) que la ley federal otorga jurisdicción exclusiva sobre procedimientos criminales en las cortes federales por violaciones a la misma; y (2) que las penalidades allí fijadas para tales casos son más severas que aquellas encontradas en la Ley núm. 31. Pero ninguno de estos puntos se ajusta exactamente a

la cuestión que él levanta. La ley insular no contempla el privar a las cortes federales de jurisdicción sobre procedimientos criminales por infracciones a la ley federal. Tampoco intenta mitigar el castigo que pueda imponerse bajo la ley federal. Al contrario, al aprobar la Ley núm. 31 la Legislatura insular dispuso un delito insular idéntico al delito federal establecido por la ley federal. Su autoridad para así hacerlo no ha sido—y como hemos visto, no puede ser—impugnada con éxito. Y de acuerdo con *Puerto Rico* v. *Shell Co.*, supra, el mero hecho de que exista un estatuto penal federal sustancialmente idéntico cubriendo la misma materia, no anula, sin más, el estatuto criminal insular. Al resolver tal contención, la Corte Suprema de los Estados Unidos dijo en el caso de *Shell*, a la pág. 271:

"Finalmente, se alega, que si se permite que subsistan la Ley Sherman y la ley local contra monopolios, resultaría un conflicto de jurisdicción entre las cortes federales y las cortes locales. Pero claramente hay muy poco, si algún, fundamento para tal temor. La ley local simplemente confiere jurisdicción a las cortes locales para poner en vigor esa ley. No se intenta, desde luego, conferir jurisdicción a dichas cortes para poner en vigor la Ley Sherman o a las cortes federales para poner en vigor la ley local. Es difícil ver como podría surgir un conflicto en cuanto a qué ley deberá ponerse en vigor y qué jurisdicción deberá invocarse, toda vez que los funcionarios a cargo de la administración y ejecución de ambas leyes están, en último análisis, bajo el control de la misma soberanía y, puede muy bien asumirse, que trabajarán en armonía."[2]

Sin embargo, si bien la coexistencia de ambos estatutos no es en sí fatal al estatuto insular, todavía queda sujeta a investigación la cuestión de si la ley insular "por sus pro-

---

(²) Como se indica más adelante, nos asegura el Administrador, quien ha comparecido como *amicus curiae*, que, lejos de crear un conflicto, la ley insular es de gran ayuda en la ejecución de la ley federal. Sin embargo, visualizamos un problema en cuanto a que, sin autoridad del Administrador, un individuo particular o funcionario insular radica una denuncia en las cortes insulares contra un delincuente a quien el Administrador planeaba perseguir en la Corte de Distrito de los Estados Unidos para Puerto Rico bajo la ley federal con sus penalidades más severas. El problema de *former jeopardy* que no existiría si

pios términos o en su administración práctica [está] en conflicto *sustancial"* con la ley federal. Es difícil creer que alguien pueda insistir seriamente en tal contención. La ley federal tiene por objeto prohibir las ganancias excesivas y estabilizar los precios con el fin de impedir la inflación en tiempos de guerra. El ganar dicha batalla en el frente doméstico es tan importante para la victoria final en la presente guerra como algunas de las batallas que nuestras fuerzas armadas libran ahora en el frente. La Ley insular núm. 31 ofrece la cooperación de la ley insular y de las cortes insulares para poder llevar a cabo el laudable propósito de la ley federal. En vez de estar en conflicto con la ley federal la ley insular confiere al Administrador recursos adicionales que utilizará, en armonía con las facilidades provistas por la ley federal, para llevar a cabo la política establecida por el Congreso que la Legislatura insular ha adoptado para sí.

"Si alguna vez ha ocurrido un estado de cosas que justifique, o aún demande, esfuerzo cooperativo entre el estado y la nación",[3] en el presente caso lo tenemos. Que esta cooperación de la ley insular ha tenido feliz resultado en la práctica es evidente de la siguiente manifestación hecha en el alegato del Administrador: "Fué precisamente la Oficina de Administración de Precios para Puerto Rico la inspiradora de la Ley núm. 31 para hacer más viable el cumplimiento, la ejecución y la administración de la política nacional sobre el control de precios. En los quince meses de vigencia del estatuto local se han procesado y castigado cien-

---

Puerto Rico fuera un Estado, entonces sería un problema serio en vista de nuestro status como territorio (*Puerto Rico* v. *Shell Co.*, supra, a las págs. 264-6). Pero la Corte Suprema de los Estados Unidos no dejó que esa dificultad le obstaculizara el camino, al resolver que los estatutos insulares y federal que creaban sustancialmente delitos idénticos podían coexistir. Y la manifestación del Administrador citada en el texto de esta opinión demuestra que la cuestión de *formcr jcopardy* representa poca, si alguna, dificultad práctica en la ejecución de ambas leyes federal e insular.

(\*) *Ex parte Lasswell*, 36 P. (2d) 678 (Calif., 1934) a la pág. 687.

tos de personas que han violado esta ley y en ningún momento ha surgido conflicto alguno entre la ejecución de la ley insular y la ejecución de la ley federal. Por el contrario la legislación local ha probado ser una gran ayuda para el cumplimiento de los reglamentos de precios máximos, primero, por el número de cortes en que pueden perseguirse las infracciones; segundo, por la sencillez y facilidad del procedimiento y tercero, por la prontitud de la resolución de los casos.''

Una cuestión un poco más seria—aún cuando el peticionario no la levantó—es el problema envuelto en la adopción por la Legislatura insular por referencia de ''los reglamentos, órdenes, y listas de precios que han sido promulgados o adoptados, o que en el futuro sean promulgados por la Oficina de Administración de Precios bajo la autoridad de la Ley de Emergencia de Control de Precios de 1942, tal como ha sido enmendada''. (Artículo 1 de la Ley núm. 31).

Empezaremos por indicar que es una práctica corriente el que una legislatura estatal adopte por referencia un estatuto federal o de algún otro estado, ya existente. Hasta donde tenemos conocimiento, ningún caso—en ausencia de una prohibición. constitucional específica al efecto—ha resuelto que tal legislación es inconstitucional por constituir una delegación ilegal de poderes legislativos (*Puerto Rico* v. *Rubert Co.*, 309 U. S. 543, 549; *Coens* v. *Marousis*, 119 Atl. 549 (Pa., 1923); Comments, Constitutional Law—Validity of State Recovery Acts Adopting Federal Codes, 33 Mich. L. Rev. 597; Notes and Comment, Constitutional Law: Delegation of Powers: The adoption by states of present and future Federal legislation, 20 Cornell L. Q. 504). Notamos al pasar, que el Congreso ha seguido por casi 150 años esta práctica de adoptar por referencia leyes penales de los estados en los cuales radican reservas federales, disponiendo que cuando se haga alguna cosa en una reserva, no punible bajo las leyes del Congreso, pero que bajo la ley estatal, de

tener jurisdicción el Estado, sería punible, el acto será pu-
nible de igual manera si se comete en una reserva (4 Stat.
115, que ha sido reenactado sucesivamente, encontrándose el
último statuto en 54 Stat. 234, 18 U.S.C.A. §468).

La Legislatura insular claramente tenía el poder de adop-
tar por referencia la existente Ley de Emergencia Federal
para el Control de Precios. Por tanto pasamos al problema
envuelto en tal adopción de reglamentos prospectivos a ser
promulgados por el Administrador. Pero aquí encontramos
que tal acción no envuelve ninguna delegación de poderes
legislativos. La Legislatura, al adoptar por referencia la
ley federal, ha establecido amplias normas, que la Corte
Suprema de los Estados Unidos ha sostenido a pesar de
las contenciones de que la ley federal constituye una
delegación nula de poderes legislativos (*Yakus* v. *United
States,* supra; *Bowles* v. *Willingham,* 321 U. S. 503). Al
disponer también en efecto que los reglamentos federales,
a ser promulgados por el Administrador bajo el estatuto
federal, también serán reglamentos insulares, la Legislatura
simplemente ha elegido al Administrador Federal como el
funcionario administrativo que tendrá poder ''para ultimar
los detalles''[4] dentro de las amplias pero válidas normas
establecidas por la propia ley. Una vez que concedemos que
la norma establecida por el estatuto es válida y que el poder
para ultimar los detalles puede delegarse a un funcionario
administrativo, el mero hecho de que la Legislatura elija
conferir este poder a un funcionario federal adecuado más
bien que a un funcionario insular, por sí solo no invalida el
estatuto o los reglamentos. El caso de *Ex parte Lasswell,*
36 P. (2d) 678 (Calif., 1934) ha resuelto a ese efecto en una
opinión bien razonada que envolvía una situación similar
bajo la Ley Nacional de Reconstrucción Industrial (*National
Industrial Recovery Act*) al igual que lo hizo la Corte de

[4] El Juez Presidente Marshall en *Wayman* v. *Southard,* 10 Wheat 1, 42.
según se cita en *United States* v. *Grimaud,* 220 U. S. 506, 517.

Apelaciones de Ohio en *City of Cleveland* v. *Piskura,* resuelto el 28 de febrero de 1944, al considerar una ordenanza municipal incorporando, por referencia, como en el presente caso, la ley federal y sus reglamentos sobre el control de precios.

Como dice el caso de *Ex parte Lasswell,* supra, a la pág. 687:

"Parece entonces que el problema se reduce a lo siguiente: Debe existir una ley en vigor que constituya la norma básica. La función del poder delegado debe ser 'determinar algún hecho o el estado de cosas sobre el que depende la ejecución "de la ley que fija la norma básica."'

"Tenemos ante nos leyes estatal y federal, ambas reconociendo un colapso en los negocios a través de toda la nación trayendo como resultado la miseria humana. Tanto la nación como el estado tratan de rehabilitar el intercambio de productos. Ambos gobiernos han decretado que esto se puede hacer de la mejor manera mediante la aprobación de códigos para los negocios que constituirán las normas de competencia leal. Estos decretos son las leyes en vigor o las normas básicas. El poder de ultimar los detalles es el poder delegado.

"La objeción incidental de que los códigos no existen cuando su violación se hace un delito es inmaterial si se ha establecido la norma básica. Si el estado no concurre con los códigos, éste puede derogar la ley y los códigos caen con ella. Nada podría ser más obvio que la ultimación de los detalles sea como necesidad natural posterior a la ley que fija la norma básica, que dispone que la violación de los detalles ulteriores de la norma básica constituirá un delito.

"La objeción incidental de que la delegación, en cuanto a la promulgación de códigos, al Presidente de los Estados Unidos por el fundamento de que el estado de California es un estado soberano y el Presidente es en este sentido un funcionario extranjero no nos impresiona grandemente. Los derechos correlativos del estado y la nación son de gran importancia, pero somos una nación no una alianza de estados extranjeros, y nuestro Presidente no es un potentado extranjero.

"Que los poderes incidentales pueden ser delegados a un cuerpo o medidos por una norma fuera del control del estado y que están sujetos a cambio, se demuestra muy bien en el caso de Ex parte Gerino, supra."

Como indica el párrafo final que acabamos de citar, el poder de ultimar los detalles a veces es delegado válidamente aún a entidades privadas. (*Ex parte Gerino,* 77 Pac. 166 (Calif., 1904)). *A fortiori,* tal delegación puede hacerse a un funcionario del Gobierno Federal por el Gobierno Insular cuando ambos gobiernos están unidos en su determinación de poner en ejecución una política común a ambos tal cual se ha incorporado en legislación aprobada por sus legislaturas. (Véase Mich. L. Rev. 597, supra, a las págs. 599-604, que da innumerables ejemplos de leyes similares de legislaturas estatales incorporando por referencia reglamentos futuros a ser promulgados por funcionarios federales y dice que (pág. 603) ''Aunque esta práctica es bastante común, como indica este material demostrativo, el autor no ha encontrado una sola decisión de corte estatal de última instancia resolviendo que la adopción por el estado de determinaciones administrativas federales prospectivas bajo legislación federal ya existente que fije una determinación administrativa adecuada, es inválida por constituir una delegación de poderes legislativos.'')⁵

■ Finalmente, el peticionario podría haber argumentado concebiblemente que la Ley Federal de Emergencia para el Control de Precios fué enmendada recientemente por el Congreso, y que es inconstitucional el que la Ley núm. 31 incorpore la nueva ley por referencia por constituir una incorporación por referencia de legislación futura (Véase 33 Mich. L. Rev. supra a la pág. 598 y los casos citados en el escolio 5; 20 Cornell L. Q. supra a la pág. 510 y casos citados en el escolio 34). Aparte del hecho de que este caso fué radicado con anterioridad a dicha enmienda (*Cf. Pueblo* v. *Or-*

---

(⁵) Como indica el Administrador, ''Puerto Rico no es la única jurisdicción donde se ha adoptado legislación de esta naturaleza. Municipios de los Estados de Alabama, Illinois, Iowa, Kentucky, Luoisiana, Michigan, New Jersey, New York, Ohio, South Carolina y Wisconsin han adoptado ordenanzas municipales y el estado de Rhode Island ha adoptado un estatuto, similares a la legislación puertorriqueña. Véase OPA Service Page 400: 501 *et seq.*''

*tiz,* 62 D.P.R. 298) y asumiendo, sin decidirlo, que estaríamos preparados para seguir las autoridades citadas, no necesitamos enfrentarnos aquí con dicho problema. Aunque todavía no han llegado a Puerto Rico dichas enmiendas, el Administrador nos ha proporcionado una copia del Informe de la Conferencia sobre las mismas que demuestra, entre otras cosas, que la ley federal ha sido enmendada eliminándole la fecha "junio 30, 1944" en la sección de la Ley de Emergencia para el Control de Precios disponiendo que ésa sería la fecha de expiración, y sustituyendo en su lugar "junio 30, 1945". Por tanto creemos que el lenguaje hallado en el caso de *United States* v. *Powers,* 307 U. S. 214, es propio al presente. Dijo allí la corte a la pág. 217: "Debido a la enmienda, la ley no ha dejado nunca de existir. No se creó una nueva ley; no se derogó ninguna ley anterior. Sin que existiera hiato de clase alguna, a la ley original se le alargó la vida. No hubo una Primera Ley Connally seguida de una Segunda Ley Connally. Durante los períodos en cuestión sólo hubo una ley."

En adición, podría muy bien insistirse en que, no importa cuál sea la regla con referencia a la alegada abdicación de soberanía envuelta en legislación estatal que adopta por referencia legislación federal prospectiva, no podrá haber objeción constitucional a la acción de la Legislatura de Puerto Rico, agente del Congreso, al devolverle al Congreso, su creador, la autoridad para legislar, originalmente recibida del Congreso.

La restante contención del peticionario puede ser resuelta en pocas palabras. Afirma que la Ley núm. 31 viola la sección 256 del Código Judicial (28 U.S.C.A. §371) que confiere a "las cortes de los Estados Unidos . . . con exclusión de las cortes de los varios Estados" jurisdicción sobre todos los casos "por penalidades y por violaciones incurridas bajo las leyes de los Estados Unidos". Lo mismo que su primer punto, este argumento está basado en la premisa

falsa de que la Legislatura insular ha tratado de conferir jurisdicción a las cortes insulares sobre infracciones a la ley federal. Toda vez que la Ley núm. 31 establece un delito insular, la Legislatura claramente actuó dentro de su derecho al disponer la persecución del mismo ante las cortes insulares (Véase *Puerto Rico* v. *Rubert Co., 309 U. S. 543,* 549-50).

*El auto de certiorari será anulado.*

El Juez Asociado Sr. De Jesús no intervino.