Alfonso Latoni, recurrente y apelado, *v.* Corte Municipal de San Juan, Hon. V. M. Fernández, Juez, recurrida; Cruz Rodríguez Rosario, interventor y apelante.

Núm. 9447.—*Sometido:* Marzo 14, 1947. *Resuelto:* Abril 8, 1947.

*David Curet Cuevas*, abogado del apelante; *Carlos D. Vázquez*, abogado del apelado; *Hon. Procurador General Interino Luis Negrón Fernández, A. Torres Braschi, Procurador General Auxiliar y Manuel Ledesma Dávila*, abogado éste del Administrador de Precios de Puerto Rico, radicaron alegato en el caso.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La cuestión aquí envuelta es si una ley insular que restringe los desahucios de arrendadores contra sus inquilinos, además de las restricciones impuestas por la Ley de Emergencia Federal sobre Control de Precios, infringe una disposición de esta última que prohibe el control estatal o local sobre los alquileres.

En 1945 Rodríguez compró una casa notificando a Latoni, quien la ocupaba bajo un contrato de arrendamiento oral de mes a mes, que la desocupara, pero Latoni no lo hizo. Rodríguez convenció a la oficina Federal de Administración de Precios que necesitaba la casa para él vivirla, y de conformidad con los Reglamentos de esta oficina, obtuvo un certificado que le autorizaba a radicar demanda de desahucio para lanzar a Latoni, transcurridos seis meses desde la fecha del certificado. Después de cumplir con todos los requisitos exigidos por los Reglamentos Federales, el 26 de marzo de 1946, Rodríguez radicó este pleito de desahucio contra Latoni ante la Corte Municipal.

El 18 de abril de 1946, las partes radicaron una estipulación en la Corte Municipal en la que el demandado admitía las alegaciones de la demanda, se allanaba a que se dictara sentencia en su contra y renunciaba al derecho de apelación,

de suerte que la sentencia fuera firme inmediatamente. Sin embargo, las partes estipularon que la sentencia no se ejecutaría hasta el 30 de septiembre de 1946, pagándose en el ínterin el mismo canon de renta mensual. El 3 de mayo de 1946, la Corte Municipal dictó sentencia a favor del demandante de conformidad con la estipulación.

El 17 de septiembre de 1946, el inquilino radicó una moción ante la Corte Municipal solicitando la suspensión de los procedimientos por el fundamento de que así lo exigía la sección 12 de la Ley núm. 464, Leyes de Puerto Rico, 1946 ((1) pág. 1327). La Corte Municipal declaró sin lugar esta moción. En un recurso de *certiorari,* la corte de distrito dictó una resolución dejando sin efecto (1) la resolución declarando sin lugar la moción del inquilino, y (2)· la sentencia de la corte municipal de 3 de mayo de 1946 a favor del demandante en lo que a la ejecución de la misma se refería. El arrendador apeló para ante este Tribunal de la resolución de la corte de distrito.

El Congreso en la sección 2(*b*) y (*d*) de la Ley de Emergencia sobre Control de Precios de 1942 autorizó al Administrador (1) a fijar cánones máximos para viviendas y (2) a restringir o prohibir desahucios que tendieran a resultar en un aumento de los cánones. 50 U.S.C.A., App., sección 902(*b*), (*d*). El Congreso dispuso la restricción de los desahucios en unión a los cánones máximos debido a que reconocía que los cánones máximos serían efectivos solamente si se controlaba también la ocupación. Si "un inquilino que se ha negado a pagar en exceso del canon máximo estuviere sujeto al desahucio, el arrendedor podría encontrar en seguida, ejerciendo presión entre los aspirantes al arrendamiento, alguien que estuviera dispuesto a una violación subrepticia del Reglamento [de canon máximo]." *Taylor* v. *Bowles,* 145 F.2d 833, 834 (E.C.A., 1944).

El Administrador Federal estableció cánones máximos y restricciones para los desahucios en Puerto Rico. El Regla-

mento 6(*a*) provee que el arrendador no puede desahuciar a un inquilino a menos que (1) éste se niegue a renovar un contrato; (2) éste irrazonablemente le niegue la entrada al arrendador; (3) viole una obligación en su alquiler o cometa un daño; (4) subarriende bajo ciertas circunstancias; (5) [revocado]; y (6) que el arrendador necesite la propiedad para él vivirla. Estos reglamentos que restringen los desahucios han sido sostenidos como "adecuados a una reglamentación efectiva sobre alquileres." *Taylor* v. *Brown*, 137 F.2d 654, 662-3, (E.C.A., 1943), certiorari denegado, 320 U.S. 787; véase también *Taylor* v. *Bowles,* supra.

El Congreso permitió que la Ley prescribiera el 30 de junio de 1946, pero después de un período de veinticinco días, el 25 de julio de 1946, aprobó una Ley extendiendo el término de su efectividad hasta el 30 de junio de 1947. El texto en el Senado de la Ley Prorrogando el Control de Precios de 1946 fué a conferencia proveyendo la derogación del control Federal sobre alquileres en cualquier Estado que estuviera preparado para funcionar bajo su propia ley sobre control de alquileres. Los miembros del Comité de conferencia no sólo eliminaron esta disposición sino que se situaron al otro extremo. La Ley nunca había prohibido antes el control local de alquileres. Pero los miembros del Comité de conferencia insertaron tal disposición y así se aprobó. Cong. Rec., julio 22, 23, 24, 1946, págs. 9777, 87; 9895-6; 9905-06; 10001, respectivamente. El último párrafo de la sección 2(*b*), 50 U.S.C.A., App., sección 902, provee por tanto ahora que "Mientras estén en vigor los cánones máximos de alquileres de acuerdo con esta ley en relación con las viviendas en cualquier área de inflación de alquileres, tales viviendas no estarán sujetas a control por parte de cualquier gobierno estatal o local."

Al preguntársele el porqué de este cambio, el senador Barkley, uno de los miembros del Comité de conferencia, dijo ante el Senado que "era la opinión general que aun en aquellos estados que temporalmente habían intervenido durante el

interregno en la creencia de que quizá no se aprobaría una
ley Federal, era la creencia e información de los miembros
del Comité de conferencia de que los estados y comunidades
realmente preferían que el Gobierno Nacional se hiciera
cargo de este asunto desde ahora hasta el resto del año,
hasta la fecha de expiración de la ley. De cualquier manera,
sólo cuatro Estados habían actuado para controlar los alqui-
leres dentro de sus demarcaciones. Bajo todas las circuns-
tancias los miembros del Comité de conferencia creyeron que
era mejor para el próximo año seguir el curso que habíamos
seguido durante el control de alquileres, y permitir que fuera
una *función exclusivamente Federal.''* (Cong. Rec., julio 24,
1946, pág. 10001; bastardillas nuestras). Los miembros del
Comité de conferencia de la Cámara informaron que ''Un
efecto de esta disposición es hacer claro que en cualquier
caso en que cualquier Estado, desde junio 30 de 1946, ha
puesto en vigor su propia ley sobre control de alquileres, las
disposiciones sobre alquileres de la Ley sobre Control de
Precios y las órdenes y Reglamentos a ella pertenecientes,
dentro del campo de su funcionamiento, sustituirá tal ley es-
tatal.'' (Cong. Rec., julio 22, 1946, 9787).

La Ley núm. 464, Leyes de Puerto Rico, 1946, conocida
como ''Ley de Alquileres Razonables'', fué aprobada el 25
de abril de 1946. La Legislatura contempló la posibilidad de
que el Congreso pudiera permitir que la Ley Federal expi-
rara el 30 de junio de 1946. Por tanto aprobó una ley com-
pleta sobre el control de alquileres. Dispuso en las seccio-
nes 3 y 6 la fijación de alquileres máximos para viviendas
bajo la ley insular; y dispuso además que la ley entraría en
vigor solamente si lo ordenara el Consejo Ejecutivo. Cuando
la ley Federal expiró el 30 de junio de 1946, el Consejo Eje-
cutivo tomó apresuradamente cartas en el asunto y puso en
vigor en julio 1 la Ley núm. 464 para viviendas.

Sin embargo, el Congreso renovó la Ley Federal después
de un interregno de veinticinco días. Además, por primera
vez el Congreso insertó una disposición en la Ley de Pró-

rrogas de 1946, prohibiendo una ley local sobre control de alquileres. Por tanto se admite que las disposiciones sobre cánones máximos de la Ley núm. 464 en lo que se refiere a viviendas están en suspenso mientras se fijen en Puerto Rico cánones máximos bajo la Ley Federal.

Se admite esto a pesar de la disposición de la sección 4 de nuestra Ley al efecto de que mientras esté en vigor en Puerto Rico la Ley Federal, las viviendas estarán sujetas a sus términos, pero que tales propiedades estarán también "sujetas a todas las disposiciones de esta Ley que no sean incompatibles con los términos de la citada Ley Federal." Cuando se aprobó en abril la ley insular, la Legislatura no pudo tener conocimiento de que la Ley Federal, aprobada en julio, incluiría una nueva disposición prohibiendo el control local sobre alquileres. Por tanto, aparentemente creyó que aquí podían coexistir el control Federal y el local sobre alquileres, si el Consejo Ejecutivo así lo ordenaba a tenor con la sección 27. Pero ahora todos los interesados reconocen que, a pesar de la sección 4, los cánones máximos insulares no pueden subsistir juntamente con las disposiciones Federales que los regulan, aun cuando no estén "en conflicto" con las disposiciones Federales. Esto es así porque la Ley Federal, aprobada posteriormente a la Ley Insular, terminantemente prohibe todo control local de alquileres y no simplemente los que "estén en conflicto".

■ Sin embargo, se alega y la corte inferior así lo resolvió, que la sección 4 tiene el efecto de dejar en vigor la sección 12 de la Ley 464, a pesar de la renovación de la Ley Federal y la prohibición en ella contra cualquier ley local sobre control de alquileres. Por tanto se impone un examen minucioso de la sección 12.

La sección 12 dispone que ningún arrendador podrá instar un procedimiento de desahucio aun cuando haya expirado el arrendamiento, y éstos se entenderán renovados. De no haber un contrato escrito, "pero sí estipulación en cuanto a

la suma a pagar por concepto de alquiler, el inquilino tendrá derecho a ocupar la propiedad mientras pague el alquiler básico, o el alquiler razonable que fije el administrador.''

Luego dispone la sección 12 que ''sólo podrá promoverse el desahucio contra inquilinos en los siguientes casos:'' (a) Cuando el inquilino no pague el cánon correspondiente a una o más de una mensualidad; (b) cuando el inquilino usa la propiedad arrendada para fines ilegales o inmorales sin el conocimiento del arrendador; (c) cuando el inquilino sub-arrienda la propiedad sin el consentimiento del arrendador; (d) cuando el arrendador desee recobrar el local a fin de demolerlo con intención de construir un nuevo edificio; (e) cuando el inquilino cause daños negligentes o maliciosos a la propiedad; ''(f) cuando el propietario procura de buena fe recuperar la posesión de una vivienda, no dedicada habitualmente a alquiler . . . para la inmediata y personal ocupación por él como sitio de residencia, siempre que no tuviera otra propiedad en la cual fijar su residencia en la misma localidad y que por lo menos durante el término de un año antes de la radicación de la demanda de desahucio hubiera vivido en una casa de alquiler . . .''

Sigue disponiendo la sección 12 que ''A partir de la fecha de vigencia de esta Ley quedará en suspenso, hasta la terminación de la emergencia declarada en la misma, todo procedimiento de desahucio que no se ajuste a las causas, condiciones y términos fijados en esta Ley.''

Así vemos que la sección 12 no se refiere a cánones máximos. Por el contrario, enmienda las causas por las cuales procede un desahucio en esta jurisdicción. A este respecto cubre por tanto el mismo terreno que cubrió el Administrador en su Reglamento promulgado de acuerdo con la sección 2(d) de la Ley Federal. Es decir, tanto los Reglamentos Federales como la sección 12, si bien con algunas pequeñas diferencias, congelan la ocupación del inquilino y restringen los procedimientos de desahucio excepto en ciertas situaciones específicas.

La corte de distrito resolvió que la prohibición de la Ley Federal contra una ley local sobre control de alquileres está dirigida solamente hacia una ley local que, o bien (a) fije cánones máximos o (b) elimine el requisito de que un arrendador debe obtener un certificado de lanzamiento del Administrador Federal antes de que pueda tratar de conseguir su remedio bajo la ley local. Pero, según la corte inferior, la prohibición en la Ley Federal contra una ley local sobre alquileres, no impide a nuestra Legislatura modificar o suspender el remedio local para el desahucio.

Consecuentemente, la corte inferior resuelve que la sección 12 no es un control local sobre alquileres sino meramente la última expresión de nuestra Legislatura sobre los motivos por los cuales puede invocarse el remedio local del desahucio; que actualmente está en vigor como tal porque no viola la prohibición Federal contra una ley local sobre control de alquileres; y por tanto, que este procedimiento debe paralizarse en virtud de la disposición de la sección 12 de que todos los procedimientos que no cumplan con sus términos quedan paralizados mientras exista la actual emergencia.

La corte de distrito no dijo en qué forma específica el presente procedimiento viola las condiciones provistas en la sección 12. Pero parece obvio de las alegaciones por qué la corte inferior paralizó los procedimientos bajo la sección 12. Aquí el arrendador deseaba la casa para él mismo vivirla. En su consecuencia, obtuvo el certificado de lanzamiento del Administrador Federal que lo autorizó a seguir con el desahucio del inquilino bajo la ley local. Pero la sección 12(f) de la Ley Insular contiene un requisito en adición a aquéllos contenidos en los Reglamentos Federales para tal arrendador: debe demostrar también que la propiedad que trata de recobrar no ha sido dedicada "habitualmente" a alquiler. Toda vez que el arrendador no alegó ni podía alegar que esta propiedad no había sido dedicada "habitualmente"

a alquiler, la corte de distrito ordenó que se paralizara este procedimiento.

La decisión de este caso por tanto gira sobre si el requisito que añade la sección 12(f) a los Reglamentos Federales sobre la materia—un arrendador que intenta recobrar una propiedad con el fin de vivirla sólo puede hacerlo si la propiedad no ha estado dedicada en el pasado "habitualmente" a alquiler—viola la prohibición de la Ley Federal Prorrogando el Control de Precios de 1946 contra una ley local sobre control de alquileres.[1]

El primer punto significativo es el propio lenguaje que usó el Congreso. Dispuso que mientras estén en vigor los "cánones máximos" bajo la Ley Federal, no habrá ninguna

---

[1] Dejamos sin resolver por ser innecesarias para la resolución de este caso dos cuestiones: *Primera,* la disposición de la sección 12(f) de que un arrendador que "habitualmente" ha alquilado su propiedad debe continuar alquilándola, puede ser de dudosa constitucionalidad. El Congreso con gran cuidado dispuso lo contrario en la Ley Federal. Dijo en la sección 4(d): "Nada en esta Ley se interpretará en el sentido de obligar a persona alguna a vender cualquier artículo o a ofrecer cualquier alojamiento en alquiler." 50 U.S.C.A., App., sección 904(d). Como hemos visto el Reglamento Federal 6(a)(6) instrumenta esta renuncia. La Corte de Apelaciones de Emergencia resolvió por tanto que un arrendador no puede ser obligado a continuar alquilando su propiedad; puede desahuciar a un inquilino para vivir él mismo la casa o para dejarla deshabitada. Al así resolver la corte manifestó que "Quizás [la sección 4(d)] . . . fué incluída en la Ley para evitar dificultades constitucionales." *Taylor* v. *Bowles,* 145 F.2d 833, 34 (E.C.A., 1944); *Taylor* v. *Porter,* 156 F.2d 805, 810 (E.C.A., 1946). *Cf. Bowles* v. *Willingham,* 321 U.S. 503, 517; *Yakus* v. *United States,* 321 U.S. 414, 431, 437–38; *Wilson* v. *Brown,* 137 F.2d 348, 351–52 (E.C.A., 1943); *Block* v. *Hirsh,* 256 U.S. 135; *Marcus Brown Co.* v. *Feldman,* 256 U.S. 170; *Levy Leasing Co.* v. *Siegel,* 258 U.S. 242; *Miranda* v. *Corte,* 63 D.P.R. 161; *Ex parte Irizarry,* 66 D.P.R. 672; *Roig* v. *People of Puerto Rico,* 147 F.2d 87 (C.C.A. 1, 1945).

*Segunda:* Aunque la sección 12(f) fuera constitucional, puede ser inválida por el fundamento de que "está en conflicto" con una Ley Federal sobre la misma materia. *Ballester Hnos.* v. *Tribunal de Contribuciones,* 66 D.P.R. 560, 578, nota 17, y casos allí citados. Tal argumento estaría predicado en lo siguiente: El Congreso dispuso que bajo ciertas circunstancias *no habrá* restricciones sobre desahucios, es decir, un arrendador, aun cuando haya dedicado "habitualmente" su propiedad a alquiler, no necesita seguirla alquilando si opta por retirar su propiedad del mercado de alquiler o por vivirla él mismo. Sección 4(d); *Taylor* v. *Bowles,* supra. ¿Está la sección 12(f) en "conflicto" con esta Ley Federal cuando dispone que tal arrendador no puede desahuciar a su inquilino?

ley local sobre "control de alquileres". Si el Congreso hubiera querido decir que mientras estén en vigor los *cánones máximos,* no habrá ninguna legislación local sobre *cánones máximos,* fácilmente pudo usar este lenguaje. Por. el contrario, deliberadamente optó por usar "control de alquileres" como la frase para prohibir, cuando sabía que él mismo había usado el término "control de alquileres" ampliamente para que incluyera no sólo la fijación de cánones máximos si que también la restricción de los desahucios.

Pasemos ahora a la discusión que hay en los casos en cuanto a si el poder del Administrador bajo la Ley Federal para restringir desahucios es un fin primordial de la Ley o sólo es incidental a su poder para evitar un aumento inflacionario en los cánones. La Corte de Apelaciones de Emergencia resolvió en *Parker* v. *Porter,* 154 F.2d 830 (E.C.A., 1946), que un inquilino no estaba "sujeto" a una orden del Administrador concediéndole a su arrendador un certificado de lanzamiento, y por tanto no tenía derecho a que se revisara la orden por dicha Corte. Al llegar a esta conclusión, la Corte dijo que un inquilino no tenía derecho adquirido alguno a la posesión bajo la Ley, y que el poder del Administrador para restringir desahucios era sólo incidental a su poder para fijar cánones máximos. Hubo un fuerte disenso al efecto de que la Ley tenía ambos propósitos—la fijación de cánones máximos y la restricción de desahucios. *Snyder* v. *Reshenk,* 38 A.2d 803 (Conn., 1944) está de acuerdo con el disenso. Y véanse 91 U. of Pa.L.Rev. 652; 16 So.Calif. L.Rev. 315.

En un recurso de certiorari la Corte Suprema de los Estados Unidos revocó a la Corte de Apelaciones de Emergencia. *Parker* v. *Fleming,* ___ U.S. ___, 91 L.ed. 395. La Corte Suprema manifestó que era innecesario resolver la controversia en cuanto a si las disposiciones de la Ley Federal sobre viviendas tenían un fin primordial y uno incidental o si tenían dos fines primordiales. Afirmó en efecto que comoquiera que sea, la restricción de los desahucios era un

aspecto integral de la Ley Federal y que un inquilino está sustancialmente afectado por una resolución concediéndole a su arrendador un certificado de lanzamiento. En su consecuencia resolvió que un inquilino está "sujeto" a tal orden y por consiguiente tenía derecho a obtener su revisión de la Corte de Apelaciones de Emergencia.

De igual manera no necesitamos determinar si la restricción de desahucios es un fin propiamente dicho o es incidental al fin de fijar cánones máximos. La importancia que para nosotros tiene el caso de *Parker* es que aun la opinión de la mayoría en la Corte de Apelaciones de Emergencia reconoció que, conjuntamente con la fijación de cánones máximos, la restricción de los desahucios es una parte importante del "control de alquileres".

Existe otro curso de razonamiento que nos lleva a la conclusión de que disposiciones contra los lanzamientos están incluídas dentro del término "control de alquileres." Probablemente podrían establecerse constitucionalmente los cánones máximos sin disponer la restricción de desahucios. Pero como ya hemos visto, *Taylor* v. *Bowles,* supra, pág. 834, un arrendador que libremente pueda desahuciar a sus inquilinos puede fácilmente evadir los cánones máximos. "Debido a que la amenaza de lanzamiento es la presión más poderosa que un arrendador puede ejercer para influir y coaccionar a su inquilino, cualquier programa efectivo sobre control de alquileres debe contener un plan para la reglamentación de los desahucios." Borders, *Emergency Rent Control, 9 Law and Contemporary Problems,* 107, 119. De suerte que las legislaturas invariablemente han provisto como cuestión práctica la restricción de los desahucios con el fin de asegurar una reglamentación efectiva sobre cánones máximos.

Ahora, supongamos el caso a la inversa en que se aprueba legislación disponiendo solamente la congelación de la ocupación de viviendas, sin ninguna disposición de que el inquilino viene obligado a pagar un canon razonable y equitativo.

Esto probablemente sería nulo por privarse de la propiedad sin el debido procedimiento de ley: los casos que han sostenido la restricción de desahucios han sido predicados en disposiciones de que el arrendador continuará recibiendo un canon razonable y equitativo. *Block* v. *Hirsh,* supra; *Yakus* v. *United States,* supra. La razón es que un arrendador que no pudiera desahuciar a un inquilino ciertamente estaría a merced de éste si se le exigiera que negociara el importe del canon con dicho inquilino, sin que exista un requisito en la ley de que el canon debe ser razonable y equitativo. Parece claro por tanto que la Legislatura no puede disponer una absoluta prohibición de los desahucios, que subsista por sí sola; debe acompañarla con una disposición sobre cánones máximos.

Así vemos que en un caso las restricciones sobre desahucios están relacionadas, por motivos prácticos, con las disposiciones de cánones máximos; en el otro caso las disposiciones sobre desahucios quizás no pueden subsistir por sí solas, sino que deben relacionarse con las disposiciones sobre cánones máximos para resistir la prueba de constitucionalidad. El efecto final es que en ambos casos la restricción de desahucios está entrelazada con las disposiciones sobre cánones máximos. Todo esto es otra forma de decir que el término genérico de "control sobre alquileres" cubre tanto los cánones máximos como las restricciones de desahucios, los dos aspectos de una situación que exige una ley sobre control de alquileres.

Es más, la mejor prueba de que ambos estatutos operan en la misma área generalmente caracterizada como "control de alquileres", son las disposiciones de la sección 4(*d*) de la Ley Federal que dice que a nadie se le exigirá que continúe alquilando su propiedad frente al requisito de la sección 12(*f*) de que un arrendedor debe seguir alquilando su propiedad si ésta ha estado alquilada "habitualmente". Dejamos a un lado la cuestión en cuanto a si estas disposiciones están en conflicto. Véase el segundo párrafo de la nota 1.

Pero nadie puede argumentar seriamente que no cubren la misma materia. En breve, ambas leyes son estatutos sobre control de alquileres.

En verdad la corte inferior reconoció que una ley de "control de alquileres" tiene dos aspectos: (1) fija cánones máximos; y (2) restringe los desahucios. Admite en su opinión que la prohibición federal contra una ley local sobre control de alquileres impide a nuestra Legislatura no solamente fijar cánones sino también eliminar o suavizar el requisito de que un procedimiento de desahucio no procederá a menos que lo autorice el Administrador Federal. La corte de distrito reconoció así que la reglamentación contra los desahucios pertenece íntegramente al "control de alquileres". Pero si la Legislatura insular no puede suavizar los Reglamentos Federales sobre desahucio porque éstos son un aspecto del "control sobre alquileres", de la misma manera los Reglamentos Federales sobre desahucio no pueden hacerse más severos por una ley local. Ambas son disposiciones sobre "control de alquileres". Y el Congreso no dijo que se prohibían solamente las leyes locales que suavizan el "control de alquileres". Dijo que no habrá leyes locales sobre control de alquileres. Esto significa que no se aprobarán localmente ni leyes más liberales ni más severas sobre control de alquileres.

Al disponer por primera vez en 1946 que el control de alquileres será exclusivamente una función federal, indudablemente el Congreso quiso lograr reglamentación solamente por ley federal en esta área hasta el punto del procedimiento provisto por la ley local para obtener el desahucio. Quizás entre el 1942 y 1946 se podían poner en ejecución las leyes locales que trataban de (a) cánones máximos y (b) restricción de desahucio que podían reconciliarse con la ley federal. *Irizarry* v. *Corte,* 64 D.P.R. 94; *cf. Miranda* v. *Corte de Distrito,* supra. Pero el 25 de julio de 1946 el Congreso se reservó para sí el campo del control de alquileres. Esto quiso decir, en cuanto a los desahucios, que el derecho

a la posesión emanaba exclusivamente de la ley federal. Por tanto si la ley federal permitía que un arrendador desahuciara a su inquilino, la Legislatura insular no podía, so pretexto de modificar el procedimiento o el remedio provisto por la ley local, intervenir con este derecho de posesión del arrendador, al disponer que no tendrá tal derecho de posesión a menos que pueda cumplir con un requisito adicional que no se encuentra ni en la ley ni en los reglamentos federales.

El inquilino y el Administrador Insular, quien compareció aquí como *amicus curiae,* dan gran énfasis, lo mismo que la corte inferior, a los reglamentos federales. Estos disponen que después que el Administrador Federal expide su certificado de lanzamiento, el arrendador debe conseguir su remedio bajo la ley local y el Reglamento 6(e) dispone que ''No se interpretará ninguna disposición de esta Sección como autorizando el lanzamiento de un inquilino a menos que tal lanzamiento esté autorizado por la ley local.''

Si la sección 12(f) hubiera estado en vigor entre 1942 y 1946, quizá las cortes insulares hubieran estado justificadas en ponerla en vigor mediante el Reglamento 6(e). Por otro lado, se podría argüir que el propósito del Reglamento 6(e) fué evitar la desorganización en los recursos locales de procedimiento o de remedios, y no autorizar restricciones substantivas adicionales sobre desahucios; y por tanto que dicho Reglamento 6(e) no le dió a nuestra Legislatura carta blanca para imponer restricciones adicionales sobre desahucios. De cualquier modo esta cuestión se ha tornado académica. El Reglamento 6(e), expedido antes de la aprobación de la Ley Federal de 1946, debe ahora leerse junto a y a la luz de la Ley Federal de 1946 que prohibe las leyes locales sobre control de alquileres. El remedio local—de cualquier modo, desde julio de 1946—no puede invadir el campo del control de alquileres. Y cualquier disposición de ley local— ora se le llame un estatuto que modifica un remedio local u ora se le llame un estatuto que dispone el control sobre al-

quileres—que es en efecto una ley sobre control de alquileres, está sustituída por la Ley Federal.

Por ejemplo, la sección 12(a) de nuestra Ley dispone que un arrendador puede desahuciar a su inquilino solamente si éste deja de pagar el canon *mensual* fijado por el Administrador *Insular*. Pero supongamos que el Reglamento Federal fija un canon máximo mayor y provee el desahucio por no pagar el canon semanal. Luego, un arrendador obtiene un certificado del Administrador Federal para el lanzamiento de un inquilino que, después de estar en descubierto por tres semanas, pagó su canon al tipo insular más bajo. No puede alegarse que este inquilino no puede ser desahuciado a pesar del hecho de que la Legislatura había modificado el "remedio" de desahucio en la sección 12(a), que impide el desahucio bajo tales circunstancias. Por el contrario, tal restricción sobre desahucio es una disposición sobre "control de alquileres" que está prohibida por la Ley Federal de 1946. De la misma manera, la sección 12(f) al prohibirle a un arrendador en el presente caso que desahucie a su inquilino para él vivir la propiedad si ésta ha sido alquilada "habitualmente", impone una restricción sobre desahucio que equivale a "control de alquileres". En ambos casos, mientras la Ley Federal de 1942 no tiene por miras modificar los remedios provistos por la ley local, con el fin de evitar el control local sobre alquileres, necesariamente tiene que penetrar dentro de cualquier supuesta ley local sobre remedio o procedimiento y suspender la parte de la misma que, so pretexto de un cambio en el procedimiento o en el remedio, disponga en substancia el control sobre alquileres. *Cf. Testa and Fleming* v. *Katt,___*U. S.*___*, resuelto el 10 de marzo de 1947.

La corte inferior cita en apoyo de su decisión, *Edison Savings & Loan Ass'n* v. *Stamberger et al.,* 53 N.Y.S.2d 578 (1945); *New York City Housing Authority* v. *Curington,* 50 N.Y.S.2d 445 (1944); y *Cannon* v. *Gordon,* 48 N.Y.S.2d 124 (1944). Estos casos se relacionan con la necesidad de seguir

el procedimiento exigido por la ley local y nada tienen que ver con el problema aquí envuelto.

■ Resta sólo un punto más a considerarse. Hemos estado suponiendo que la Legislatura quiso decir en su sección 12 que se eliminarían *todos* los procedimientos para obtener la posesión de bienes inmuebles a menos que el arrendador pudiera cumplir con las condiciones allí provistas. Pero el inquilino afirma en su alegato que "no hay nada en la ley que impida al demandante seguir, en vez del procedimiento sumario de desahucio, el procedimiento ordinario para recobrar la posesión de su casa." De ser cierta esta manifestación y si la sección 12(f) le dejara al arrendador mano libre para radicar tal pleito civil corriente, convendríamos en que la sección 12(f) simplemente modifica el remedio y no es un estatuto sobre control de alquileres en violación de la ley federal que prohibe una ley local sobre control de alquileres. En verdad, esto es precisamente lo que los Reglamentos Federales contemplaron cuando le dejaron la cuestión de remedios a la ley local: la Legislatura puede disponer un remedio ordinario o sumario. Lo único que la Legislatura no podía hacer fué eliminar *todos* los remedios a menos que el arrendador pudiera cumplir con las condiciones substantivas adicionales impuestas por la ley local que equivalía al control sobre alquileres.

Nuestra dificultad está en que interpretamos la sección 12 diferentemente. No podemos convenir en que cuando la Legislatura aprobó la Ley núm. 464, que disponía la fijación de cánones máximos y restringía los desahucios bajo la ley insular, quiso decir no obstante que permitiría el lanzamiento no restringido de inquilinos mediante acciones civiles ordinarias. Más bien estamos satisfechos con que al disponer la Legislatura dentro del contexto de la Ley 464 que no se permitirá ningún recurso de "desahucio" a menos que concurrieran ciertas circunstancias, quiso decir que prohibía cualquier recurso, ordinario o sumario, para recobrar la posesión de viviendas. De otro modo la Legislatura estaría frus-

trando sus propios fines de congelar la ocupación de viviendas. Véase *Miranda* v. *Corte de Distrito,* supra. También, la sección 12 restringe el desahucio de inquilinos de edificios comerciales que no están cubiertos por la Ley Federal. Es difícil creer que la Legislatura quiso decir que los arrendadores podían radicar una acción ordinaria para recobrar la posesión de los edificios comerciales a pesar de las disposiciones de la Ley núm. 464. No podemos atribuirle a la Legislatura tal *brutum fulmen.* El Administrador Insular en su alegato no adopta esta sugestión del inquilino. Tampoco nosotros. Por el contrario resolvemos que la sección 12 dispone una prohibición absoluta contra todos los recursos de un arrendador para recobrar la posesión de su propiedad en manos de su inquilino, a menos que se cumpla con sus condiciones. Y como tal la sección 12(*f*) es una disposición sobre control de alquileres.

Nuestra decisión puede sintetizarse como sigue: El Congreso ha dispuesto que el ''control sobre alquileres'' de viviendas consistirá de cánones máximos y de restricción de desahucios. Pero el Congreso ha dispuesto, quizás debido a motivos constitucionales, que nadie vendrá obligado a continuar alquilando su propiedad. El Administrador Federal ha dispuesto de conformidad, por Reglamento, que un arrendador puede desahuciar a su inquilino para vivir él la casa. Pero la Legislatura insular ha legislado sobre esta misma cuestión. En la sección 12(*f*) prohibía que un arrendador que ha tenido su propiedad alquilada ''habitualmente'' desahuciara a su inquilino, aun cuando el arrendador deseara la casa para vivirla. No nos detenemos a determinar si la sección 12(*f*) es constitucional o si está en conflicto con la disposición de la Ley Federal de que nadie estará obligado a continuar alquilando su propiedad. Más bien basamos nuestra decisión en lo siguiente: la sección 12(*f*) es una disposición sobre ''control de alquileres'' porque dispone una restricción sobre desahucios en adición a las restricciones sobre desahucios provistas en la Ley Federal sobre control de alquileres y sus

Reglamentos. La Ley Federal de 1946, aprobada después de la sección 12(f), dispone que mientras estén en vigor los cánones máximos bajo la Ley Federal, las viviendas no estarán sujetas a control de alquileres por ley local alguna. El mandato de la Ley Federal de 1946 es claro. La sección 12(f) puede o no estar en conflicto con la Ley Federal. Pero es una ley sobre control de alquileres. Eso nos obliga a decidir que queda en suspenso hasta el 30 de junio de 1947, cuando la Ley Federal expira.

En vista del resultado a que hemos llegado, es innecesario que consideremos las otras cuestiones suscitadas por el apelante.

*La resolución de la corte de distrito será revocada y el caso devuelto con instrucciones de que lo remita a la corte municipal para ulteriores procedimientos no inconsistentes con esta opinión.*