## PECK v. FINK.

(Court of Appeals of District of Columbia.
Submitted October 6, 1924. Decided
November 3, 1924.)

No. 4189.

1. **Landlord and tenant** ⊗⟞⟞200(1½)—**Rent Act inoperative, in so far as it provides for regulation of rents after emergency which justified enactment of statute has ceased to exist.**

Rent Law Oct. 22, 1919, giving rent commission right to regulate rents in District of Columbia, continued in force by Act Aug. 24, 1921, Act May 22, 1922, and Act May 17, 1924, *held* inoperative, in so far as it provides for regulation of rents after emergency which originally justified statute has ceased to exist.

2. **Landlord and tenant** ⊗⟞⟞200(1½)—**Act continuing Rent Law in force after emergency had ceased to exist held unconstitutional.**

Act May 17, 1924, continuing in force until certain date Rent Law Oct. 22, 1919, continued in force by Act Aug. 24, 1921, and by Act May 22, 1922, *held* unconstitutional because emergency justifying original act no longer existed.

Writ of Error to Municipal Court of District of Columbia.

Action between Frances F. Peck and Jacob H. Fink. To review the judgment rendered, Peck brings error. Reversed and remanded.

Certiorari denied 266 U. S. ——, 45 S. Ct. 197, 69 L. Ed. ——.

Louis Ottenberg, of Washington, D. C., for plaintiff in error.

J. L. Krupsaw and A. C. Wells, both of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. This writ of error to the municipal court of the District of Columbia involves the question whether the emergency giving rise to the enactment of the so-called Rent Law of the District still existed on May 2, 1924, the date of a determination by the rent commission reducing the agreed rental of the premises in question.

On May 1, 1922, the plaintiff in error leased to the defendant in error the premises involved at an agreed monthly rental, payable in advance. On November 19, 1923, defendant in error filed a complaint with the rent commission for an adjustment of the rent. Hearing was had in March following, and on May 2, 1924, the commission announced its finding. Meanwhile the Supreme Court of the United States had announced its decision in the case of Chastleton Corp. v. Sinclair, 264 U. S. 543, 44 S. Ct. 405, 68 L. Ed. 841, and plaintiff in error, contending that the finding of the rent commission was a nullity, served notice upon defendant in error as tenant to surrender the premises, by reason of his failure to pay the agreed rent.

The life of the original Rent Law of October 22, 1919 (41 Stat. 298), was limited to two years. In Block v. Hirsh, 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165, the constitutionality of that Act was upheld because, as stated in Pa. Coal Co. v. Mahon, 260 U. S. 393, 416, 43 S. Ct. 158, 67 L. Ed. 322, 28 A. L. R. 1321, it dealt with the congestion of the city of Washington resulting from the war, although the act "went to the verge of the law." The opinion in the Coal Co. Case was announced in December of 1922. The Act of August 24, 1921 (42 Stat. 200), purported to continue the Rent Law in force, with some amendments, until May 22, 1922. On the latter date there was a further declaration by Congress of the continued existence of the emergency giving rise to the original act, which, with further amendments, was extended until May 22, 1922, by 42 Stat. 543. The decision of the Supreme Court in the Chastleton Case was announced April 21, 1924. On the 17th of May, 1924 (43 Stat. 120), Congress purported to continue the Rent Law in force until May 22, 1925. It thus appears that this emergency legislation, originally limited to expire in 1921, has been prolonged by successive extensions until the middle of 1925, a period of more than 5½ years.

[1] The material facts in the Chastleton Case were as follows: On August 7, 1922, the rent commission passed an order purporting to fix reasonable rates for apartments in the Chastleton Apartment House in the city of Washington from the preceding 1st day of March. A bill in equity was filed challenging this order, on the ground that the emergency justifying interference with ordinarily private rights in 1919 had come to an end in 1922. This court affirmed the decree below dismissing the bill, on the authority of Block v. Hirsh, 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165, leaving it for the Supreme Court to "say whether conditions had so far changed as to affect the constitutional applicability of the law." Chastleton Corp. v. Sinclair, 264 U. S. 543, 44 S. Ct. 405, 68 L. Ed. 841. After directing attention to the various extensions of the original Rent Law, the Supreme Court said that the declaration by the Legislature contained in the original and

extending acts, as to the existence of an emergency, was entitled to due respect "so far as it relates to present facts. But even as to them a court is not at liberty to shut its eyes to an obvious mistake, when the validity of the law depends upon the truth of what is declared [citing authorities]. And still more obviously, so far as this declaration looks to the future, it can be no more than prophecy, and is liable to be controlled by events. A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change, even though valid when passed."

As to the particular order involved, the court said: "The order, although retrospective, was passed some time after the latest statute, and long after the original act would have expired. In our opinion it is open to inquire whether the exigency still existed upon which the continued operation of the law depended. It is a matter of public knowledge that the government has considerably diminished its demand for employees, that was one of the great causes of the sudden afflux of people to Washington, and that other causes have lost at least much of their power. It is conceivable that, as is shown in an affidavit attached to the bill, extensive activity in building has added to the ease of finding an abode. If about all that remains of war conditions is the increased cost of living, that is not in itself a justification of the act. Without going beyond the limits of judicial knowledge, we can say at least that the plaintiffs' allegations cannot be declared offhand to be unmaintainable, and that it is not impossible that a full development of the facts will show them to be true. In that case the operation of the statute would be at an end."

The court then declared that it was not necessary to inquire how far it might go in deciding the question for itself, on the principles enunciated in certain cited cases, adding: "These cases show that the court may ascertain as it sees fit any fact that is merely a ground for laying down a rule of law, *and if the question were only whether the statute is in force to-day, upon the facts that we judicially know we should be compelled to say that the law has ceased to operate.*" (Italics ours). Inasmuch as the case before the court involved conditions in Washington at different dates in the past, the court remanded the case, that evidence might be taken in the trial court. In other words, the court ruled, as we read the opinion, that although it judicially knew that the emergency giving rise to the enactment of the legislation had ceased to exist on the date of the opinion, or April 21, 1924, it was not prepared, without evidence, to declare such emergency at an end on the date of the order of the rent commission, entered August 7, 1922.

[2] The order here involved was entered subsequent to this authoritative declaration by the Supreme Court, namely, on May 2, 1924. While it is true that after such declaration, or on May 17, 1924, Congress purported to continue the legislation in force for still another year, there was no constitutional basis for the legislation; the Supreme Court having declared the emergency at an end upon facts judicially known to the court. The opinion of the court is so clear and direct as to leave no room for doubt as to its meaning, and our plain duty is to apply it in the case before us. It of course is unnecessary for us to attempt to add to the reasoning of the Supreme Court, but we may say with propriety that, if the emergency in question is not at an end, then this legislation may be extended indefinitely, and that which was "intended to meet a temporary emergency" may became permanent law.

The judgment must be reversed, with costs and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.