Sucrs. de José Fernández, S. en C., peticionaria y apelada, *v.* Manuel V. Domenech, Tesorero de Puerto Rico, demandado y apelante.

Núm. 8406.—*Sometido:* Junio 23, 1942. *Resuelto:* Julio 31, 1942.

Hon. *Procurador General George A. Malcolm* y *G. Benítez Gautier, Subprocurador Auxiliar,* abogados del apelante; *E. Martínez Rivera,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Esta es una apelación de una orden de la Corte de Distrito de San Juan concediendo un *injunction* preliminar contra el apelante, Tesorero de Puerto Rico. Dicho injunction

prohibía al Tesorero intervenir con la venta por la apelada del ron "Palo Rico" en el mercado de Puerto Rico.

Los hechos esenciales de este caso no están en controversia. La apelada, José Fernández, S. en C., se dedica a la manufactura y distribución en Puerto Rico de espíritus destilados. En septiembre 1940 la apelada inició gestiones para introducir en el mercado de Puerto Rico un nuevo ron, Palo Rico. Durante ese mes ordenó la impresión de etiquetas, para dicho ron. En septiembre 20, 1940, obtuvo de la Administración Federal sobre Alcohol un certificado de aprobación de la referida etiqueta, según lo requieren la ley y los reglamentos federales. La misma etiqueta, ligeramente variada, fué igualmente aprobada por la Administración Federal sobre Alcohol en diciembre 7, 1940. En septiembre la firma Fernández inició una campaña de anuncios de esta nueva marca de ron a través de la radio, la prensa y propaganda personal. Se compraron botellas, que se alega fueron hechas especialmente para el ron Palo Rico, a un costo de $5,000, y se ordenaron las tapas para dichas botellas, también hechas especialmente, a un costo de $1,000. En diciembre 10, 1940, la firma Fernández radicó debidamente ante el Secretario Ejecutivo de Puerto Rico una solicitud de registro de la marca de fábrica del ron "Palo Rico". Con anterioridad a dicha fecha ninguna otra persona había registrado una marca de fábrica similar. Todos los impuestos de Rentas Internas habían sido satisfechos, y las correspondientes estampillas adheridas a las tapas de las botellas.

En diciembre 7, el ron Palo Rico fué por primera vez lanzado al mercado por la firma Fernández. En diciembre 3 dicha firma había escrito al Departamento de Hacienda solicitando se aprobara el uso por ella de la referida etiqueta de "Palo Rico". La carta fué marcada en el Departamento de Hacienda como recibida el día 3 de diciembre a las 9:30 A. M. Una carta escrita por Ordóñez & Hno., otra firma licorera, solicitando se aprobara una etiqueta que llevaba también el nombre de ron Palo Rico, fué marcada como recibida

en el Departamento de Hacienda a las 9:00 A. M. de ese mismo día, diciembre 3. En diciembre 5 el Tesorero escribió a la firma Ordóñez rechazando su solicitud de aprobación de la referida etiqueta por el fundamento de que "otro rectificador" ya había presentado para aprobación la misma etiqueta. En diciembre 6 Ordóñez & Hno. solicitó la reconsideración de esa decisión. En diciembre 14 el Tesorero escribió una carta a la firma Ordóñez, certificando la aprobación de su etiqueta, y ese mismo día escribió una carta a la firma Fernández devolviéndoles su etiqueta sin aprobar, por el fundamento de que la misma etiqueta ya había sido aprobada para uso de Ordóñez & Hno.

Por tanto, en diciembre 17, 1940 la apelada radicó la presente petición de injunction, alegando que el Tesorero había dado instrucciones verbales a sus agentes de Rentas Internas de impedir que la apelada vendiera ron en Puerto Rico que tuviera adherida la etiqueta "Palo Rico". La apelada calculó en $25,000 el valor de esta marca de fábrica. El apelante admitió en su contestación su intención de impedir la venta de ron Palo Rico por parte de la apelada, alegando como justificación el hecho de que ya él había aprobado una etiqueta similar a favor de la firma Ordóñez, así como su autoridad, para impedir el uso de marcas de fábrica que confundirían al público, de acuerdo con la sección 6 (D) del Reglamento Núm. 1 promulgado bajo la Ley de Espíritus y Bebidas Alcohólicas. El Tesorero ha apelado de la orden de la corte de distrito de abril 19, 1941, concediendo el injunction solicitado.

La Ley núm. 6, Leyes de Puerto Rico, 1936, Tercera Sesión Extraordinaria ((2) pág. 45), conocida como la Ley de Espíritus y Bebidas Alcohólicas, según quedó enmendada por la Ley núm. 149, Leyes de Puerto Rico, 1937 (pág. 395), provee en su artículo 40 lo siguiente:

"Toda persona que en Puerto Rico manufacture, o envase bebidas alcohólicas tributables de acuerdo con esta Ley, vendrá obligada a fijar en cada envase una etiqueta indicativa de los siguientes parti-

culares: contenido exacto del envase; contenido alcohólico por volumen; sitio en que se haya destilado o fabricado y nombre del envasador. Si dicha bebida alcohólica fuese ron, vendrá obligada dicha persona a hacer constar prominentemente en la etiqueta la siguiente frase en inglés: 'Puerto Rican Rum', en letras de una altura no menor de cinco dieciséis avos (5/16) de pulgada y de líneas de un dieciséis avo (1/16) de pulgada o más de ancho, debiendo extenderse dicha frase en un largo no menor de tres (3) pulgadas. Para envases de $\frac{4}{5}$ pinta y menos, la frase 'Puerto Rican Rum' deberá aparecer en la etiqueta en letras de una altura no menor de un octavo ($\frac{1}{8}$) de pulgada, debiendo extenderse dicha frase en un largo no menor de una y media ($1\frac{1}{2}$) pulgada. En la etiqueta de toda bebida alcohólica deberá aparecer también el rótulo 'destilado', 'rectificado', o 'mezclado', según sea el caso, de acuerdo con los reglamentos que al efecto dictare el Tesorero; *Disponiéndose, además,* que la marca o nombre del ron deberá aparecer prominentemente en la etiqueta y en letras de un tamaño por lo menos igual a tres veces el tamaño de las letras en que aparezca el nombre del fabricante, destilador, rectificador o envasador.''

El artículo 49 de dicha ley autoriza al Tesorero a promulgar aquellas reglas y reglamentos que sean necesarios para hacer efectiva la ley. En cumplimiento con dicho artículo se promulgó el Reglamento Núm. 1 de 1938. El artículo 6(C) de dicho reglamento dispone, en parte, como sigue:

''Ninguna persona envasará bebidas alcohólicas en Puerto Rico sin haberse provisto, mediante solicitud de un 'certificado de aprobación de marbetes'. Deberá someterse al Negociado por lo menos tres de cada una de las etiquetas o marbetes que hayan de fijarse a los envases, por toda persona que envase bebidas alcohólicas. Dicho certificado tendrá adheridas por lo menos una de cada una de las etiquetas o marbetes aprobadas por el Tesorero, las que estarán sujetas a inspección en cualquier momento por los agentes de rentas internas.''

El artículo 6(D) del Reglamento Núm. 1 lee, en parte, como sigue:

''Ninguna etiqueta o marbete contendrá manifestación alguna, marca de fábrica, marca comercial, dibujos o fechas que puedan engañar o confundir al comprador o al público en general.''

Indudablemente el Tesorero tenía autoridad para disponer, como lo hizo en el artículo 6(C) del Reglamento Núm. 1, que ninguna persona envasará bebidas alcohólicas sin haberse provisto de un certificado de aprobación de etiqueta. Este reglamento permite al Tesorero poner en vigor las disposiciones del artículo 40 al efecto de que toda etiqueta debe contener cierta información detallada. Sin embargo, los representantes del Departamento de Hacienda declararon en este caso que la etiqueta de la apelada cumplía en todo respecto con las disposiciones del artículo 40, y que el certificado provisto por el artículo 6(C) se hubiera expedido, a no ser por las disposiciones del artículo 6(D).

El artículo 6(D) del Reglamento Núm. 1 va algo más lejos. Es un poco más difícil deducir del texto de la Ley de Espíritus y Bebidas Alcohólicas que la intención de la Legislatura fué autorizar un reglamento destinado aparentemente a evitar la competencia desleal. Habiendo la Legislatura dispuesto expresamente en el artículo 40 la información que deberá contener una etiqueta, quizá se podría argüir que los reglamentos sobre etiquetas deben limitarse a complementar el artículo 40; que cuestiones de competencia desleal están fuera del alcance de la referida ley; y que por lo tanto el Tesorero no tenía autoridad para promulgar el artículo 6(D). Por otro lado, bien podría argüirse que la Ley de Espíritus y Bebidas Alcohólicas es un estatuto que otorga al Tesorero poderes tanto amplios como detallados sobre la manufactura y distribución en una industria que la experiencia ha demostrado se requiere reglamentación estricta y sobre la cual el gobierno tiene amplios poderes (*Bacardí Corporation of America* v. *Domenech, Treasurer of Puerto Rico,* 311 U. S. 150, 167, 168). Bajo tal teoría, aún en ausencia de alguna disposición estatutaria específica al efecto, quizá se podría resolver que el propósito y el espíritu general de dicha ley han autorizado al Tesorero para adoptar medidas contra la competencia desleal en la distribución de bebidas

intoxicantes promulgando y poniendo en vigor el artículo 6(D). De todos modos, no es necesario que demos una contestación definitiva a dicha cuestión en este caso. Debido a razones que más adelante haremos notar, asumimos, sin decidirlo, que el artículo 6(D) del Reglamento Núm. 1 es, generalmente hablando, válido.

Pasamos por lo tanto a la cuestión de la aplicación del referido reglamento a este caso específico. Desde luego la Legislatura pudo aprobar legislación específica regulando el uso de las marcas de fábricas en Puerto Rico en cuanto a la industria licorera, siempre que no estuviera en conflicto con la legislación federal sobre la materia (*Puerto Rico* v. *Shell Co.*, 302 U. S. 253). Pero la Legislatura no ha hecho esto. El artículo 40 ciertamente no es una reglamentación detallada de dicha materia. Como ya se ha advertido, solamente dispone que las etiquetas de bebidas alcohólicas deberán contener cierta información. Sin embargo no puede haber sido la intención de la Legislatura que esta industria, quizá la más cuidadosamente vigilada en la nación, deba permanecer huérfana de la protección ofrecida por nuestra ley general estatutaria sobre esta materia. Tampoco pudo haber sido su intención que la reglamentación fragmentaria que hallamos en el artículo 40, que no tiene relación alguna con el problema genérico de la reglamentación de marcas de fábrica, deba imperar por sí sola en este asunto.

Si el Tesorero hubiera intentado promulgar reglamentos detallados para el uso de marcas de fábrica o de etiquetas en la industria licorera, bajo la autoridad otorgádale por el artículo 49 de la Ley de Espíritus y Bebidas Alcohólicas, nos confrontaríamos aquí con el problema de determinar si tales reglamentos son válidos, a la luz de la Ley Núm. 66, Leyes de Puerto Rico, 1923 ((1) pág. 415), que autoriza el registro de marcas de fábrica en Puerto Rico, especialmente si tales reglamentos del Tesorero estuviesen en conflicto en alguna forma con las disposiciones de la Ley Núm. 66. Pero ese

problema no surge en este caso. El Tesorero simplemente ha optado por promulgar el artículo 6(D) que únicamente equivale a una declaración general del propósito fundamental del registro de marcas de fábrica. Por tanto el artículo 6(D) puede sin dificultad alguna acomodarse dentro del armazón de la referida Ley Núm. 66 de 1923, que es el estatuto general autorizando el registro de marcas de fábrica, y considerarse en conjunto. En verdad, no parece haberse dudado en el caso de *Bacardí* que el registro de etiquetas para la manufactura y distribución de ron en Puerto Rico, se llevaba a cabo debidamente al registrarlas en la oficina del Secretario Ejecutivo de Puerto Rico bajo la referida ley general de registro de marcas de fábrica (311 U. S. 150, a las páginas 153, 157).

La apelada, como hemos visto, trató de cumplir con las disposiciones de la Ley Núm. 66. Dicha ley dispone el registro de una marca de fábrica por el Secretario Ejecutivo de Puerto Rico (sección 1), al demostrarse bajo juramento que el solicitante tiene derecho a usarla en Puerto Rico (sección 2). Se provee para la notificación del propuesto registro mediante publicación, y para casos de oposición al mismo (sección 5). La sección 6 dispone que "cuando dos o más marcas estén pendientes de registro, y estén en conflicto por su semejanza, el Secretario Ejecutivo decidirá cuál de éstas tendrá derecho al registro, basándose en la prioridad en cuanto al uso de la misma, hecho que habrá de probársele satisfactoriamente". La sección 12 dispone "Que el registro de una marca de fábrica bajo las disposiciones de esta ley será evidencia *prima facie* de propiedad".

El método por el cual el Departamento de Hacienda intentó aprobar el uso de la etiqueta en cuestión por la firma de Ordóñez se revela por la siguiente declaración del Jefe del Negociado de Bebidas Alcohólicas:

"Sometieron dos etiquetas muy similar, casi casi igual, y estudiando el asunto bajo varios puntos de vista nos pareció que teníamos

que resolver la cuestión a base de cuál etiqueta llegó primero, *no en cuestión de registración (sic) de marca porque nosotros no tenemos que ver con eso.''* (Bastardillas nuestras.)

Pero el artículo 6(D) no exige que el Tesorero, sin investigar los hechos, apruebe las etiquetas para ron a base de la prioridad en el recibo de las solicitudes por él. El aplicar invariablemente tan rudimentario criterio, a la luz de (*a*) la corriente práctica mercantil mediante la cual muchas gestiones preliminares con miras a la explotación anteceden tanto a la venta de tales productos como al registro de sus marcas de fábrica, (*b*) la ley y los reglamentos federales que exigen la aprobación de tales etiquetas por la Administración Federal de Alcohol, y (*c*) las disposiciones de la Ley Núm. 66 para el registro de marcas de fábrica, sería irrazonable, arbitrario y contrario al espíritu de la reglamentación y uso de marcas de fábrica.

El presente caso es un ejemplo casi perfecto de la necesidad de que el Tesorero investigue todas estas fases de la situación antes de decidir qué etiqueta ''confundiría . . . al público en general''. La apelada explotó esta marca de fábrica; obtuvo la aprobación para su uso de la Administración Federal de Alcohol; radicó una solicitud para su registro ante el Secretario Ejecutivo bajo la Ley Núm. 66. La firma Ordóñez, por otro lado, simplemente llegó media hora antes que la apelada al escritorio del Tesorero. La Ley Núm. 66, y el mismo artículo 6(D) del Reglamento del Tesorero, tuvieron por objeto cubrir situaciones como la del presente caso, protegiendo a aquéllos que podían demostrar un anterior derecho de propiedad sobre una marca de fábrica. Los hechos en este caso, aunque quizá desconocidos para el Tesorero en la época en que éste decidió seguir la regla de primero llegado, primero servido, claramente demuestran la necesidad de investigar los hechos y de insistir en que se cumpla con las disposiciones de registro de la Ley Núm. 66 con el fin de frustrar cualquier intento de enriquecerse a sí mismo

a costa de otro. Véase Collman, *He Who Reaps Where He Has Not Sown: Unjust Enrichment in the Law of Unfair Competition*, 55 Harv. L. Rev. 595.

Es casi innecesario añadir que el injunction era el remedio adecuado en este caso. El Juez Asociado Sr. Frankfurter recientemente empleó el siguiente lenguaje luminoso en el caso de *Mishawaka Rubber and Woolen Mfg. Co.* v. *S. S. Kresge Co.*,—U. S.—, resuelto en mayo 4, 1942, al discutir la naturaleza del derecho envuelto en caso tal: "La protección de las marcas de fábrica es el reconocimiento que hace la ley de la función psicológica de los símbolos. Si bien es cierto que vivimos por símbolos, no es menos cierto que compramos artículos guiándonos por ellos. Una marca de fábrica es un atrecho comercial que induce al comprador a seleccionar lo que él desea o lo que él ha sido inducido a creer que desea. El dueño de una marca explota esta propensión humana haciendo toda clase de esfuerzos para impregnar el ambiente del mercado con el poder de atracción de un símbolo familiar. No importa los medios que se empleen, el propósito es el mismo—transmitir mediante la marca, a la mente de los compradores potenciales, la conveniencia del producto en que aparece. Una vez conseguido esto, el dueño de la marca de fábrica posee algo de valor. Si alguien invade el magnetismo comercial del símbolo que el dueño ha creado, éste puede obtener reparación." El Tesorero le estaba impidiendo a la apelada ejercitar el valioso derecho de propiedad descrito por el Juez Asociado Sr. Frankfurter. Solamente el injunction podía detener su actuación.

*La orden de la corte de distrito concediendo el injunction preliminar será confirmada.*

El Juez Asociado Sr. Travieso no intervino.