EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ISMAEL LEANDRY ALOMAR, acusado y apelante.

Núm. 12341.—*Sometido:* Julio 1, 1947. *Resuelto:* Julio 21, 1947.

*Carlos E. Colón,* abogado del apelante; *Hon. Procurador General Luis Negrón Fernández,* y *Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

Eᴌ Jᴜᴇᴢ Asociado Señor De Jesús emitió la opinión del tribunal.

El apelante fué acusado de una infracción al artículo 10, inciso *a*, de la Ley Insular de Suministros (Ley núm. 228 de 1942, (1) pág. 1269), en relación con la Orden Administrativa núm. 83 del Administrador General de Suministros, de 30 de julio de 1946. La alegada infracción consistió en que en uno de los días del mes de agosto de 1946 y en la ciudad de Ponce, el acusado voluntaria y maliciosamente, vendió a Juan Correa Santiago, para su consumo, dos onzas de manteca por la cantidad de 15 centavos, el cual es un precio mayor que el que legalmente podía cobrarle.

Por los méritos de la prueba la corte lo declaró culpable y lo condenó a sufrir tres meses de cárcel y a pagar $100 de multa.

█ Arguye el apelante que la acusación no aduce hechos constitutivos de delito. Su contención está predicada en que la Orden que se alega infringió, no fija un precio máximo para los productos del cerdo, sino que establece las normas para que los comerciantes, importadores y detallistas puedan determinar el precio máximo. La norma es la siguiente: el importador deberá sumar un ocho por ciento sobre el costo y el detallista un diez y ocho por ciento sobre el costo para él. Concluye el apelante que como en la acusación no se expresa que el precio de 15 centavos por dos onzas de manteca es un precio mayor que el costo para él, más el 18 por ciento, la acusación es insuficiente.

La acusación, como hemos visto, le imputa haber vendido "dos onzas de manteca por la cantidad de 15¢, el cual es un precio mayor que el que tenía que cobrarle."

La acusación le informa que el precio a que él vendió excede del autorizado por el Administrador General de Suministros y si el apelante deseaba más detalles, pudo solicitarlos mediante moción para que el fiscal se los suministrase.

■ Sostiene el apelante que la sentencia es nula por haberlo convicto de un delito distinto del imputádole. Este señalamiento de error se funda en que en la minuta consignó el secretario lo siguiente: "La corte por la prueba practicada declaró al acusado culpable y convicto de Infracción a la Ley de Precios . . ."

Como acertadamente indica el fiscal de este Tribunal, no se ha elevado la transcripción de evidencia, en la cual deben aparecer las palabras textuales del juez al imponer la sentencia. En tales circunstancias, el apelante no nos ha colocado en condiciones de determinar si la sentencia se dictó como se expone en la minuta, o si se trata de un mero error clerical del secretario. *Johnson* v. *State,* 63 So. 338 (Miss. 1913) e *In re Parks,* 45 N. W. 824 (Mich. 1890). Siendo ello así, el apelante no ha destruído la presunción de correcta que conlleva la sentencia.

■ Por último, alega el apelante que la Orden Administrativa·núm. 83 del Administrador General de Suministros es inconstitucional porque el Congreso de los Estados Unidos, al aprobar The Price Control Extension Act of 1946, sección 1A (*e*) (8)(A), prohibió que se aplicaran precios máximos hasta agosto 21, 1946, a productos derivados del ganado, entre los cuales está incluída la manteca de cerdo. Concluye entonces el apelante que habiéndose promulgado la Orden Administrativa núm. 83 del Administrador General de Suministros el 30 de julio de 1946, para tener efecto inmediatamente, y fijándose en el mismo el precio en que los productos de cerdo podían venderse hasta el 21 de agosto de 1946, dicha Orden Administrativa está en conflicto con la Ley Federal aprobada el 25 de julio de 1946 y por consiguiente es inconstitucional.

La sección 1A (*e*) (8) (A) de la citada ley dice así:

"Ningún precio máximo ni ningún reglamento u orden *bajo esta Ley* o The Stabilization Act of 1942, según ha sido enmendada, será

aplicable antes de agosto 21, 1946 a ganado, leche o alimentos o alimento para ganado derivados o manufacturados en su totalidad o sustancialmente de ganado o leche; . . . '' (Bastardillas nuestras.)

El transcrito precepto legal está limitado por sus propios términos a reglamentos u órdenes bajo Price Control Act of 1946 o bajo Stabilization Act of 1942 y Price Control Act of 1942, según fueron enmendados. La Ley Federal no prohibe a los estados o territorios reglamentar localmente los precios de dichos productos. Se ha argüido que si bien el precepto transcrito no prohibe expresamente la reglamentación, del contexto íntegro del estatuto y especialmente de su Exposición de Motivos surge, de manera implícita, la política del Congreso de eliminar la reglamentación de precios y que, por tanto, los gobiernos locales no pueden legislar sobre esta materia. Esto equivale a invocar, en forma negativa, la doctrina de exclusión de legislación local, por estar en conflicto con legislación federal sobre la misma materia. *Puerto Rico* v. *Shell Co.*, 302 U.S. 253 (1937).

Parece evidente que para adoptar una política tan diametralmente opuesta a la que venía imperando durante la actual emergencia—control absoluto de los precios—el Congreso hubiera manifestado expresamente su intención de prohibir legislar a los gobiernos locales. Tan importante cambio de frente no podía quedar en la incertidumbre de una interpretación estatutaria. En el mismo estatuto que consideramos, cuando el Congreso prorrogó el control de alquileres y no quiso que los estados o gobiernos locales legislaran sobre esa materia, usó este lenguaje inequívoco: ''Mientras estén en vigor los cánones máximos de alquileres de acuerdo con esta ley en relación con las viviendas en cualquier área de inflación de alquileres, *tales viviendas no estarán sujetas a control por parte de cualquier gobierno estatal o local.*'' Sección 2(*b*), 50 U.S.C.A. App., sección 902. (Bastardillas nuestras.) Véase *Latoni* v. *Corte*, ante, pág. 140.

Lo expuesto nos lleva a la conclusión de que la Orden Administrativa núm. 83 del Administrador General de Suministros no está en conflicto con la supuesta política pública del Congreso de los Estados Unidos.

*Procede la confirmación de la sentencia.*