Felipe Avila, peticionario, *v.* Tribunal de Distrito de San Juan, Hon. Federico Tilén, Juez, demandado; Carlos S. Hernández, interventor.

Núm. 1729.—*Sometido:* Diciembre 9, 1947. *Resuelto:* Enero 13, 1948.

---

12

*Vicente Géigel Polanco,* abogado del peticionario; *R. Arjona Siaca* y *A. Figueroa Rivera,* abogados del interventor, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La Ley Federal de Inquilinato de 1947 autoriza al propietario a desahuciar a su inquilino con el fin de ocupar la casa para vivirla. Cierta legislación insular ha provisto requisitos y condiciones adicionales para el caso de que el

propietario radique tal acción ante los tribunales de esta isla. Los casos que tenemos a la vista exigen que determinemos el efecto de esta legislación local. El problema se comprenderá mejor si se examina el mismo a la luz de la historia del control de inquilinato desde 1942.(¹)

██ Por la sección 2(b) y (d) de la Ley de Emergencia sobre control de Precios de 1942, que estuvo en vigor desde 1942 hasta el 30 de junio de 1947, el Congreso autorizó al Administrador (1) a fijar cánones máximos para viviendas y (2) a restringir o prohibir prácticas de desahucios que puedan resultar en aumentos de cánones. 50 U.S.C.A. Apéndice, sección 902(b), (d). La Ley no prohibía específicamente las leyes locales sobre control de alquileres, excepto que durante un corto período—del 25 de julio de 1946 al 30 de junio de 1947—la sección 2(b) dispuso que "Mientras estén en vigor los cánones máximos de alquileres de acuerdo con esta Ley en relación con las viviendas en cualquier área de inflación de alquileres, tales viviendas no estarán sujetas a control por parte de cualquier gobierno estatal o local."

El Administrador estableció cánones máximos y restricciones para desahucios en Puerto Rico bajo la Ley de Emergencia sobre Control de Precios. También dispuso en el Reglamento 6(a)(6) que un propietario no podía desahuciar a su inquilino a menos que necesitara la propiedad para vivirla. Es importante indicar que toda otra reglamentación para restringir desahucios fué dejada a la discreción del Administrador, mientras que el Reglamento 6(a)(6) era lo único que la Ley le exigía que promulgara. El Administrador venía obligado a promulgar el Reglamento 6(a)(6) precisamente porque la sección 4(d) de la Ley proveía, pro-

---

(¹)Por los motivos discutidos más adelante, esta opinión no solamente cubre el caso arriba intitulado, si que también los certioraris núms. 1733, *Torres* v. *Tribunal;* *Torres,* Interventor; 1734, *Fernández* v. *Tribunal; Silva,* Interventor; y 1736, *Soler* v. *Tribunal; Roger,* Interventor.

bablemente por motivos constitucionales, que "Nada en esta Ley se interpretará en el sentido de obligar a persona alguna a vender cualquier artículo o a ofrecer cualquier alojamiento en alquiler."

La Ley núm. 464, Leyes de Puerto Rico, 1946, conocida como la Ley de Alquileres Razonables, fué aprobada el 25 de abril de 1946. El artículo 12(f) de la misma proveía originalmente, entre otras cosas, a pesar de la sección 4(d) de la Ley Federal y del Reglamento 6(a)(6), que un propietario no podía desahuciar a su inquilino de su propiedad para él vivirla si dicha propiedad había estado en el pasado dedicada "habitualmente" a alquiler.

Resolvimos en *Latoni* v. *Corte*, 67 D.P.R. 140, que el requisito de que la propiedad no haya estado dedicada "habitualmente" a alquiler equivalía a una ley sobre control de alquileres; que, por tanto, violaba la enmienda de 25 de julio de 1946 de la sección 2(b) de la Ley Federal que prohibía específicamente leyes locales sobre control de alquileres; y, en su consecuencia, que el artículo 12(f) quedaba en suspenso en cuanto a ese extremo entre el 25 de julio de 1946 y el 30 de junio de 1947, fecha en que expiraba la Ley Federal.

La Ley de Emergencia sobre Control de Precios fué sucedida, en lo que concierne a control de alquileres, por la Ley de Inquilinato de 1947, que empezó a regir el 1ro. de julio de 1947, y que, a menos que sea prorrogada, expirará el 29 de febrero de 1948. *Public Laws* 129, Congreso 80, 1ra. Sesión. La sección 211 de esta Ley dispone que la misma será aplicable a los territorios y posesiones de los Estados Unidos lo que, desde luego, incluye a Puerto Rico. Con ciertos cambios que no son pertinentes aquí, el Congreso fijó en dicha Ley los cánones máximos. Y reconociendo, según indicamos detalladamente en el caso de *Latoni*, que para que los cánones máximos sean efectivos deben estar acompañados de disposiciones sobre desahucios, también dispuso restricciones para los mismos.

Pero el Congreso ya no deseaba crear, como en las leyes anteriores, el cargo de Administrador con amplia autoridad para restringir desahucios mediante reglamentación. Por el contrario, estableció en la sección 209(a) de la propia Ley las restricciones sobre desahucios y las causales correspondientes; y al así hacerlo privó al Administrador—conocido ahora como el Acelerador de Hogares—de toda facultad para promulgar reglamentos en relación con desahucios. Una vez más es importante indicar que el Congreso, al igual que en la sección 4(d) de la Ley y Reglamento 6(a)(6) anteriores—probablemente aún por motivos constitucionales—repitió en la sección 209(a)(2) la norma de la sección 4(d) de las leyes anteriores y específicamente dispuso que un propietario puede recobrar la posesión de una vivienda para ocuparla personalmente.([2])

Bajo la Ley de Emergencia de Control de Precios el Administrador promulgó reglamentos que exigían la notificación a la oficina Federal local y al inquilino, cuando el propietario deseaba el desahucio de éste por una de las causales permitidas por los reglamentos. En caso de una vivienda vendida a una persona que deseaba ocuparla, los reglamen-

---

([2])Dicha sección provee en parte como sigue:

"Sec. 209(a). Ningún propietario podrá instar una acción o procedimiento contra un inquilino ante cualquier corte para recobrar la posesión de ninguna vivienda controlada por esta Ley, respecto de la cual esté en vigor bajo este título un canon máximo, no obstante el hecho de que el inquilino no tenga contrato de arrendamiento o que éste haya expirado, siempre que el inquilino continúe pagando el canon a que el propietario tiene derecho, a menos que

"(1) *bajo la ley del Estado* en que se inicie la acción o procedimiento el inquilino esté (A) violando alguna cláusula del contrato (distinta a la obligación de pagar un canon mayor que el permitido bajo esta Ley o de entregar la posesión de tal vivienda) o (B) constituye un estorbo en tal vivienda o la esté usando para fines inmorales o ilícitos o para cualquier fin que no sea el de vivienda;

"(2) cuando el propietario trata de buena fe de recobrar la posesión de la vivienda para en seguida ocuparla personalmente como su residencia;" (Bastardillas nuestras).

tos proveían que el Administrador expediría un certificado autorizando al propietario a desahuciar a su inquilino de acuerdo con el procedimiento establecido por la ley local, de ordinario después de cierta espera que originalmente era de. tres meses, y que luego se prorrogó a seis.

La Ley de Inquilinato puso fin a todos estos reglamentos. Ahora no se necesita certificado del Acelerador de Hogares ni notificación a éste como condición previa a un pleito de desahucio en las cortes insulares. Por tanto, el control absoluto de los procedimientos de desahucio descansa ahora en las cortes de la isla. Pero casi es innecesario decir que las cortes insulares han de aplicar la ley según la aprueba el Congreso en relación con las restricciones de desahucio y las causales para ello. Véase *Testa* v. *Katt*, 330 U. S. 386.[3]

Después que se resolvió el caso de *Latoni*, la Asamblea Legislativa el 22 de julio de 1947, enmendó el artículo 12(*f*) de la Ley Insular. Ley núm. 36, Leyes de Puerto Rico, 1947, Sesión Extraordinaria (pág. 139). Eliminó el requisito que se impugnó en dicho caso; a saber, el propietario que desee ocupar la vivienda debe establecer que la propiedad no ha estado antes dedicada "habitualmente" a alquiler. Sin embargo, el artículo 12(*f*) todavía exige al propietario que desee obtener la vivienda para ocuparla, el cumplimiento de ciertos requisitos que no se encuentran en la sección 209(*a*)(2) de la Ley Federal de Inquilinato: (1) que el propietario adquirió la propiedad con anterioridad al 25 de abril de 1946, fecha en que se aprobó originalmente la Ley insular; (2) que no tiene otra propiedad adecuada en la misma localidad para fijar su residencia; y (3) que no

[3] El *Senate Report* Núm. 86, Congreso 80, 1ra. Sesión, indica que bajo la nueva Ley "los propietarios no tendrán en ningún caso que notificar a u obtener certificado alguno de cualquier agencia del gobierno federal antes de iniciar procedimientos de desahucio. Las disposiciones del proyecto serán aplicadas por las cortes locales al considerar acciones de desahucio radicadas ante ellas."

ha vivido en una casa de su pertenencia durante el año in-
mediatamente anterior a la radicación de la demanda.(⁴)

Si todavía prevaleciese el caso de *Latoni*, el artículo 12(*f*):
aún como fué enmendado, quedaría en suspenso por ser una
ley sobre control de alquileres. Pero la Ley de Inquilinato
no contiene una disposición similar a la enmienda del 25
de julio de 1946 de la sección 2(*b*) de la Ley de Emergencia
sobre Control de Precios, que prohibía expresamente las le-
yes locales sobre control de alquileres. La decisión del caso
de *Latoni* por tanto ya no es aplicable.

En ausencia de una prohibición específica en una
ley Federal contra legislación local, el Gobierno insular
puede ejercer poderes concurrentes aprobando, bajo su po-
der de policía, legislación que cubra la misma materia, siem-
pre y cuando que ésta no esté tan íntimamente mezclada y
relacionada con responsabilidades del gobierno nacional, que
su propia naturaleza de por sí haga surgir la inferencia de
que se trata de un asunto que compete exclusivamente al go-
bierno nacional. *Bethlehem Co.* v. *State Board*, 330 U.S. 767,
772; *Hines* v. *Davidowitz*, 312 U.S. 52, 66; *Hill* v. *Florida*,
325 U.S. 538, 542; Grant, *The Scope and Nature of Concurrent
Power*, 34 Col.L.Rev. 995.

El control de alquileres no es tan exclusivamente una
responsabilidad nacional, que su materia como tal requiera

---

(⁴)El inciso (*f*) según fué enmendado lee como sigue:

"Cuando el propietario hubiera adquirido la vivienda con anterioridad al
25 de abril de 1946 y demuestre a satisfacción del tribunal que trata de reco-
brar de buena fe la propiedad, en todo o en parte, para uso inmediato y ocu-
pación personal de la misma, siempre que no tenga otra propiedad adecuada
en la cual fijar su residencia en la misma localidad y que por lo menos durante
el término de un año antes de la radicación de la demanda de desahucio no
hubiera vivido en una casa de su propiedad; *Disponiéndose*, que en este caso el
tribunal no expedirá la orden de lanzamiento hasta después de haber dado al
inquilino término razonable dentro de la presente emergencia para conseguir otro
albergue, entendiéndose que en ningún caso el término será menor de cuarenta
(40) ni mayor de ciento ochenta (180) días; *Disponiéndose, además*, que todo
propietario que, bajo los términos de este inciso, obtuviere un desahucio bajo la
alegación de que procura la posesión del inmueble arrendado para fijar en él
su residencia, con el propósito de burlar el derecho del inquilino a seguir ocu-
pando el inmueble, si no fijare su residencia en dicho inmueble dentro de los

que resolvamós que el Congreso, una vez que legisla sobre ella, intenta ocupar el campo exclusivamente, a pesar de que el statuto Federal no prohibe específicamente un estatuto local sobre el mismo asunto. Véanse *Pueblo* v. *Leandry,* 67 D.P.R. 658; *Pueblo* v. *Vidal Márquez,* 67 D.P.R. 757; *Panhandle Pipe Line Co.* v. *Comm'n.,* 332 U.S. 507, resuelto el 15 de diciembre de 1947. Por consiguiente, dada la ausencia de una prohibición expresa en la Ley de Inquilinato contra una ley local sobre control de alquileres, la Asambea Legislativa insular después del 1 de julio de 1947 podía aprobar un estatuto de control de alquileres para complementar la Ley Federal, siempre que nuestra Ley no esté sustancialmente en conflicto con la Ley Federal. *Puerto Rico* v. *Shell Co.,* 302 U.S. 253; *Latoni* v. *Corte Municipal,* supra, 149, nota 1, párrafo 2; *Irizarry* v. *Corte,* 64 D.P.R. 94; *Ballester Hermanos* v. *Tribunal de Apelación de Contribuciones,* 66 D.P.R. 560, 578, nota 17, revocado por otros motivos, 162 F.2d 805 (C.C.A. 1, 1947), cert. denegado 332 U.S. 816; *Luce & Co.* v. *Junta Salario Mínimo,* 62 D.P.R. 452; *Sucrs. de J. Fernández* v. *Domenech, Tes.,* 60 D.P.R. 906, 912; *Walz* v. *Lavelle,* 70 N.E.2d 373, 375 (Ohio, 1946).

¿Qué es lo que constituye tal conflicto sustancial? La Corte Suprema ha dicho que el conflicto o pugna debe ser tan directo y positivo que las dos leyes no puedan armonizarse o coexistir al mismo tiempo. *Kelly* v. *Washington,* 302

treinta (30) días siguientes a la fecha en que fuere desocupado por el inquilino o se lo cediere o arrendare a otra persona dentro de los doce (12) meses siguientes a la fecha en que lo hubiera desocupado el inquilino, incurrirá en un delito menos grave y, convicto que fuere, será castigado con una multa no menor de doscientos (200) dólares ni mayor de quinientos (500) dólares, o cárcel por un término no menor de treinta (30) días ni mayor de noventa (90) días, o ambas penas a discreción del tribunal; *Disponiéndose, asimismo,* que en cualquiera de estos casos, el inquilino afectado tendrá derecho a que el propietario le indemnice los daños y perjuicios que se le causaren, los cuales se fijarán en una suma que en ningún caso será menor de cien (100) dólares o de tres (3) veces el importe del canon mensual de alquiler, cualquiera de estas sumas que fuere la mayor, más las costas y honorarios de abogado del demandante, según lo fije el tribunal; *Disponiéndose, finalmente,* que tan pronto como el inquilino desocupe cualquier propiedad de alquiler que tuviera arrendada, el propietario podrá retirar dicha propiedad del negocio de alquiler."

U.S. 1, 10. O dicho en otra forma, el estatuto local no debe servir de obstáculo al cumplimiento y ejecución de todos los fines y objetivos del Congreso. *Hill* v. *Florida,* supra, 542; *Hines* v. *Davidowitz,* supra, 67; *Allen-Bradley Local* v. *Board,* 315 U.S. 740, 749.

Llegamos a los casos ante nos, los que deben ser resueltos a la luz de este historial de ley y de jurisprudencia. En estos cuatro casos la corte de distrito resolvió en efecto que, a pesar de que la Ley de Inquilinato no prohibe las leyes locales sobre alquileres, la sección 209(a)(2) de la ley Federal le creó un derecho al propietario para desahuciar a su inquilino con el fin de ocupar aquél la vivienda que no podía menoscabarse por el artículo 12(f) de la ley insular, el cual impone requisitos adicionales, no incluídos en la sección 209(a)(2), como condiciones previas al ejercicio de tal derecho.

No es menester que expongamos en detalle los hechos de los cuatro casos. Baste decir que los hechos en algunos de ellos hacen necesario que determinemos si un propietario que no alega y prueba cualquiera de estos tres requisitos adicionales del artículo 12(f), tiene derecho no obstante, en virtud de la sección 209(a)(2) de la Ley Federal, a desahuciar a su inquilino con el fin de ocupar él la vivienda. Expedimos los autos de certiorari para determinar si la corte de distrito cometió error en estos casos, que vinieron ante ella en apelación de la corte municipal, al negarse a suspender los procedimientos de conformidad con el artículo 12 de la Ley insular, el que autoriza la suspensión de los mismos cuando éstos no se ajustan a los términos de nuestra Ley.

Empezamos por indicar que la Asamblea Legislativa insular tiene control exclusivo del remedio y procedimiento que desee proveer para los pleitos de desahucio. Puede disponer que el procedimiento sea sumario u ordinario. Y puede fijar términos razonables para cosas tales como la radicación de alegaciones y prórrogas para la ejecución de

las sentencias. La disposición contenida en el artículo 12(*f*), según fué enmendado, al efecto de que un inquilino tiene derecho a un período no menor de 40 ni mayor de 180 días para procurarse otra vivienda, cae dentro de esta categoría. Esto no está en conflicto con la sección 209(*a*)(2). Meramente la complementa. Además, es eminentemente razonable: bajo el Reglamento 6(*a*)(6) tal inquilino tenía derecho a un período de seis meses. De igual modo, las disposiciones del artículo 12(*f*) en relación con penalidad criminal y pleitos civiles contra un propietario que luego de lanzar al inquilino no ocupa la propiedad, o la cede en arrendamiento a otra persona, no están en conflicto con la sección 209(*a*)(2) y por tanto son válidas. Véase *Irizarry* v. *Corte,* 64 D.P.R. 94.

Pero las otras disposiciones del artículo 12(*f*) tienen aspecto distinto. No consideramos hasta qué extremo puede la Asamblea Legislativa imponer requisitos sustantivos adicionales cuando un propietario trata de desahuciar a su inquilino por los fundamentos expuestos en la sección 209(*a*) (1). La única cuestión ante nos es limitada. Ella es si la Asamblea Legislativa puede disponer válidamente entre el 1ro. de julio de 1947 y el 29 de febrero de 1948, que un propietario no puede desahuciar a su inquilino para ocupar él mismo la vivienda, a lo cual tiene derecho bajo la sección 209(*a*)(2), a menos que también pueda cumplir con los requisitos del artículo 12(*f*) al efecto de que (1) el propietario adquirió la propiedad con anterioridad al 25 de abril de 1946; (2) no tiene otra propiedad adecuada para fijar su residencia; y 3 no ha vivido en casa de su pertenencia durante el año anterior a la radicación de la demanda.

Aparentemente el Congreso tuvo serias dudas respecto a su poder para exigirle a un propietario que continuara arrendando su propiedad a un inquilino que no tenía contrato por un término fijo, cuando el propietario deseaba ocupar la propiedad para vivirla. Véanse *Latoni* v. *Corte,* supra, pág. 149, nota 1, párrafo 1, y casos allí citados. Aun

bajo las leyes anteriores, en las que se dejaron al Administrador todos los otros aspectos sobre desahucios, el Congreso expresamente confirió a los propietarios este derecho incondicionalmente. Y la actual Ley Federal, que priva al Acelerador de Hogares de toda autoridad para reglamentar los desahucios y por el contrario expresamente señala en la propia Ley las causales para los mismos, repite esta causal.

Además, es significativo el hecho de que el Congreso, al establecer en la sección 209(a)(2) el derecho de un propietario a desahuciar a su inquilino con el fin de ocupar la vivienda, no dispuso que este derecho lo tuviera el propietario solamente si el mismo existía bajo la ley del estado. La sección 209(a)(2) establece de manera terminante esta causal de desahucio independientemente de la ley local. Esto contrasta con la sección 209(a)(1), donde las causales de desahucio deben surgir bajo la ley del estado.

El estatuto Federal en la sección 209(a) (2) establece afirmativamente y sin condiciones una causal explícita de desahucio. Otorga al propietario el derecho a obtener posesión de la vivienda con el fin de él ocuparla. La Asamblea Legislativa insular está en libertad de disponer cualquier remedio o procedimiento razonable que elija para el ejercicio de ese derecho. Y el propietario debe ejercitar ese derecho a tenor con el procedimiento y el remedio provistos por la ley local. Pero la Asamblea Legislativa no puede menoscabar o limitar este derecho sustantivo y con ello crear un conflicto sustancial con el estatuto Federal, disponiendo, como lo ha hecho aquí, requisitos sustantivos adicionales como condiciones previas a la existencia del derecho mismo.

Claro es que los tres requisitos adicionales en el artículo 12 (f) de la ley insular no son procesales. Más bien son restricciones afirmativas sobre la causal de desahucio creada por la sección 209(a)(2) de la Ley Federal. En el caso de *Latoni* llegamos a la conclusión de que una restricción algo si-

milar sobre desahucios hallada entonces en el artículo 12(f) de nuestra Ley era una disposición sobre control de alquileres. De igual modo, estos tres requisitos son disposiciones sobre control de alquileres e imponen condiciones previas a un derecho que de otra forma podría ejercitarse libremente bajo la Ley Federal. En ese sentido el artículo 12(f) está sustancialmente en conflicto con la Ley Federal de Inquilinato: las dos leyes no pueden armonizarse o coexistir al mismo tiempo; el estatuto local es un obstáculo al cumplimiento y ejecución de los fines y objetivos de la Ley Federal. Estos tres requisitos del artículo 12(f) quedan en su consecuencia en suspenso mientras esté en vigor la sección 209(a)(2) de la Ley Federal.([5])

*Los autos de certiorari serán anulados.*

([5])Como resultado de la conclusión a que hemos llegado, no consideramos la cuestión de si pueden imponerse constitucionalmente restricciones sustantivas a un propietario que trata de desahuciar a un inquilino que no tiene contrato por término fijo para ocupar él la vivienda. Esta cuestión no puede surgir hasta que la actual Ley Federal sea modificada o expire. Véanse *Latoni* v. *Corte,* supra, 149, nota 1, párrafo 1; *cf. Miranda* v. *Corte,* 63 D.P.R. 161.

El peticionario también sostiene que la Ley núm. 464 es nula porque la emergencia en ella descrita no tiene término fijo. La sección 23 dispone que la Ley "cesará" cuando se declare mediante resolución concurrente de la Asamblea Legislativa que ha concluído la emergencia. Nadie podría sostener con seriedad que la emergencia en lo que a viviendas se refiere ya no existe en esta comunidad. Por tanto, es innecesario que consideremos esta contención ahora. Compárense *Chastleton Corp.* v. *Sinclair,* 264 U.S. 543, y *Peck* v. *Fink,* 2 F.2d 912 (C.C.A., D.C., 1924) con *East New York Savings Bank* v. *Hahn,* 326 U.S. 230, 234.